# Maltby *versus* The Reading and Columbia Railroad Company.

1. The loan for which the bonds of a railroad company chartered by Pennsylvania are given, is taxable under the Acts of April 29th 1844 and May 1st 1854.

2. Taxation is exclusively for the legislature; and whilst they confine themselves to that which is in the nature of a tax law, their powers are not subject to judicial review.

3. Property within the jurisdiction of this Commonwealth and enjoying its protection, is taxable although its owner resides elsewhere.

4. Corporation loans though debts, are, like moneys at interest, taxable in Pennsylvania.

5. The Act of April 30th 1864 was not to *impose* a tax, but to provide a mode of *collection*; and this, with other tax laws, provides that the three-mill tax shall be assessed on the value of corporation loans, and retained by the corporation officers out of the interest.

6. The tax laws of Pennsylvania tax corporation loans as property in Pennsylvania, and appoint the corporation the collector of the tax for the state; they are constitutional and valid.

APPEAL from the Court of *Nisi Prius*.

This was a proceeding in equity by Caleb S. Maltby for himself and others, plaintiffs, against the Reading and Columbia Railroad Company, defendants.

The plaintiffs are non-residents of this state, and are holders of coupon bonds, payable on the 1st of March 1862, with interest thereon, at the rate of 7 per cent. per annum, payable at the Union Bank in New York, semi-annually, on presentation of the

[Maltby *v.* Reading and Columbia Railroad Co.]

interest-warrants thereto annexed. The bonds are part of a series secured by a mortgage on the road, &c., of the defendants.

The plaintiffs allege in their bill that they presented their warrants for payment, that the defendants refused to pay them in full, but retained from the interest an amount equal to three mills on every dollar of the principal, which they claim a right to do as a tax imposed by the laws of Pennsylvania: the plaintiffs deny this right, and pray for a decree that the defendants pay them the whole amount and pay the tax, if any, themselves.

The defendants admit that they retained the tax of three mills, &c., and have paid the amounts to the state, by virtue of the Act of April 29th 1864, § 32, Purd. p. 949, P. L. 497; Id. § 34, Purd. 950, pl. 120, P. L. 499; Act of April 30th 1864, § 3, P. L. 219.

The case came up on bill and answer, and the bill was dismissed *pro formâ*, without argument,—no opinion was delivered.

The errors assigned are, dismissing the bill, and not decreeing the relief prayed for.

*G. W. Biddle*, for the appellant.

1. Are the loans of the company taxable at all?

2. Are they taxable when owned by a non-resident of the state?

3. If so taxable, is not the company itself bound to pay the tax, without deducting it from the interest?

1. The Act of April 29th 1844, Purd. 949–950, pl. 117, 120, P. L. 486, upon which the liability is claimed to depend, does not impose a tax on these loans. The 32d section taxes " mortgages, *money owing by solvent debtors, whether by promissory note, penal or single bill, bond or judgment,*" &c. These are the words relied on to sustain the tax. The 34th section requires the county commissioners annually to assess a tax of " three mills on every dollar of the value" of property made liable by the 32d section to taxation. *Interest* as such is not made liable under the 34th section (opinion of C. J. Chase, Jackson *v.* Northern Central Railroad Company, Cir. Ct. of U. S. of Maryland). Then does the language cover the loans themselves? If " money owing by solvent debtors" is to include such loans, why afterwards refer to *deposits in saving funds and public loans?* There is also the qualification, " whether by promissory note, penal or single bill, bond or judgment." This particularity excludes the application to company loans. Deposits and public loans are as much " money owing by solvent debtors" as loans by a railroad company, and yet the legislature thought them not included under this head. The meaning of general words should not be extended: Archbishop of Canterbury's Case, 2 Rep. 46, 1 Bl. Com. 88. The legislature makes a distinction. The Act of April 22d 1846, § 8, Purd. 950, pl. 124, P. L. 488, taxes loans and stocks, whose interest is guar-

antied by the State. If the Act of 1844 taxed loans of all corporate bodies, why pass this law?

2. Every principle of sound reasoning is against taxing the loans of a non-resident. Taxation is the correlative of protection. But what protection? A citizen having security from the state for his property and person, should be taxed for it. This principle would cover his *real estate* here even if he be a non-resident, for it is regulated and protected by the laws of the state where it is situated. To tax personal estate without regard to the owner's domicil requires to be *expressly* authorized: School Directors *v.* James, 2 W. & S. 568; Hood's Estate, 9 Harris 106; Borough of Carlisle *v.* Marshall, 12 Casey 397; Spangler *v.* York County, 1 Harris 327. The decision in West Chester *v.* Darlington, 2 Wright 157, was upon the express words of Act of April 22d 1846, Purd. 951, pl. 125. The Act of 1844 is a system of taxation upon citizens of the Commonwealth. It might be proper to tax a non-resident stockholder in a corporation, because, as to his membership in it, he is a citizen of the state which created, and which also protects, its property. But not so with a loanholder; he is not a member of it, but merely furnishes his money to it. The construction urged would exclude foreign capital from the state. No one contends that money owing by an individual debtor to a non-resident is taxable; why should a different rule be applied to a creditor of a corporation?

3. The right of the company to deduct the tax is drawn from the Act of April 30th 1864, § 3, Purd. 1378, pl. 4, Pamph. L. 219, which requires the president, &c., of any corporation which pays interest on which a state tax is imposed, " before payment of the same to retain from depositors," &c., the state tax, and pay it to the state treasurer. The act requires the deduction to be made only where there is a state tax on the interest. But by the Act of 1844, the tax is not imposed upon the interest.

If the Act of 1864 does apply to this case, the tax cannot be retained from the defendant. The company agreed to pay 7 per cent. interest; this is the contract, without qualification as to the deduction of tax. If the Act of 1864 designed to authorize this, it would be impairing the obligation of a contract: Woodruff *v.* Napnall, 10 How. 190; Curran *v.* Arkansas, 15 Id. 304. We cannot impute to the legislature such design.

*J. E. Gowen* and *St. G. T. Campbell,* for appellees.—1. These bonds are "money owing by solvent debtors;" bonds are usual forms in which debts exist. The enumeration of other subjects of taxation will not exclude these, as may be proved by the redundancy seen in numerous laws throughout the statute-book. Deposits and public loans are taxable without regard to the

[Maltby v. Reading and Columbia Railroad Co.]

solvency or insolvency of the debtors. The argument that the Act of 1846, taxing loans guarantied by the state, is evidence that other corporation loans were not taxed, would put the state into the anomalous position of taxing loans she had guarantied, and leaving those not guarantied exempt. The Act of 1846 neither expressly or impliedly repeals the Act of 1844. The Act of 1846 probably was passed to avoid the construction that the Act of 1844, which exempted loans of the Commonwealth, exempted also those which she had guarantied. The bonds issued by the defendants then, being liable to taxation, the tax is on the principal payable out of the interest.

2. The Commonwealth has power to tax property *within* the state, even if the owners reside out of it. Then has she taxed it? The terms of the Act of 1844 are so broad as to prevent any property from being exempt through any peculiarity of ownership. The subject is *property*, not *person*. The act imposes the tax on real estate in the same terms as on personal estate. To exempt money of non-residents would exempt all their chattels. The laws of Pennsylvania protect the property of non-residents as well as that of residents. Hood's Estate was not under these statutes; but that case recognises the reciprocal duties between the government and citizen—one furnishing protection, and the other paying for it. In School Directors v. James, the question was not whether the property was free from taxation, but where it was taxable. In Spangler v. York County, the question of the owner's residence was not considered. In Carlisle v. Marshall, the property held by a trustee in Carlisle for a *cestui que trust* in New York, was not allowed to be taxed for borough purposes. In West Chester School District v. Darlington it was decided that, under Act of April 22d 1846, property of minors in another state was taxed for school purposes where the trustee lived.

3. It must be presumed that the legislature meant something by the Act of 1864; but to restrain it to interest would make it meaningless. It refers to a pre-existing tax, and designates the interest as the source from which it is to be paid.

Neither the contract nor the statute requires the defendants to pay the plaintiff's taxes; the tax is on his money, not on the defendants'. The defendants before 1864 certainly were not bound to reimburse the tax paid by the plaintiff; if there was no obligation then, the fact of appointing the defendants' treasurer the agent of the Commonwealth to collect the tax, would not create an obligation. Nor if the tax was imposed for the first time in 1864 could the inviolability of the contract be pleaded against the taxing power of the state: Bank v. Billings, 4 Peters 514.

[Maltby *v.* Reading and Columbia Railroad Co.]

The opinion of the court was delivered, March 26th 1866, by

WOODWARD, C. J.—The plaintiff, a non-resident of Pennsylvania, held certain bonds of the Reading and Columbia Railroad Company, with coupons attached, representing the semi-annual interest stipulated for in the body of each bond. Upon presenting the coupons for payment the company claimed that it was their right and duty to deduct and retain for the Commonwealth a state tax equal to three mills on every dollar of the principal of the bonds. To resist this claim and compel the company to pay the coupons in full, the plaintiff filed this bill in equity, upon which three questions are made :—

First. Is the tax leviable at all, under existing laws, upon the loan of the company ?

Second. If laws exist to authorize the tax, are the loans taxable when held and owned by a non-resident of the state ?

Third. If so taxable in the hands of a non-resident owner, is not the company bound by the terms of its contract to pay the stipulated interest to its creditor without a reduction of the tax ?

These questions embrace the whole case, and they shall be considered in their order.

First. The taxableness of corporation loans depends upon the will of the legislature with whom the taxing power is lodged, and that will is to be gathered from the terms of Acts of Assembly. No impression whatever is made upon such a question by arguing the unreasonableness of taxing debts. It may be true that such a policy tends to prevent capital from seeking investment in Pennsylvania, but the argument should be directed rather to the legislature who make the laws than to the courts whose duty it is to expound them. The objects of taxation as well as the rate of assessment are selected and prescribed by the legislature. Corporation loans are very conspicuous forms of property, and depend for their existence and value upon the state government which authorizes them, and if in the judgment of the legislature they ought to contribute to the support of the government that protects them, and for this purpose are taxed, it avails nothing to argue that the government ought to derive its support from other kinds of property. *Sic volo sic jubeo* is the language of a sovereign, and in respect to state taxation of property within the state, the Commonwealth is a sovereign power.

Our only question upon this point of the case is, therefore, whether the Acts of Assembly do clearly manifest the legislative intent to tax this species of property. The 32d section of the Act of 29th April 1844, Purd. 949, enumerates the objects of taxation. Real estate is first mentioned, and then personal estate, and among the specifications under this latter head are " mortgages," and " money owing by solvent debtors, whether by promissory note, penal or single bill, bond or judgment, and all

public loans or stocks whatsoever, except those issued by the Commonwealth." The 34th section provides for an assessment for the use of the Commonwealth of three mills on every dollar of the value of the properties enumerated in the 32d section.

By virtue of various Acts of Assembly, counties, boroughs and school districts were empowered to tax the same forms of property that were taxable for state purposes ; and corporation loans having thus become subject to these local taxes, the Act of 1st of May 1854, Purd. 942, entitled "An Act to exempt certain loans and bonds from taxation" was passed, which declared, among other things, that "*all bonds or certificates of loans of any railroad company incorporated by this Commonwealth be, and the same shall be liable for taxation for state purposes only.*"

Now whether we derive the legislative intent from the words "mortgages or moneys owing by solvent debtors," or all public loans whatsoever, as found in the Act of 1844, or rejecting all these words, place ourselves on the Act of 1854 alone, we can be at no loss as to the legislative intent to tax such securities as are in question here.

The coupons and bonds are secured by a mortgage, and constitute part of the mortgage-debt ; they represent also money owing by a solvent debtor, and in some sense they are a public loan, for they are authorized by the highest authority in the state ; and it would be no very strained construction to bring them under either of these titles in the 32d section of the Act of 1844, and if referable to either, then clearly the loan or debt, and not merely the accruing interest upon it, was taxable by that act. And such must have been the general understanding of the enactment, else the Exemption Act, ten years later, would not have been needed. But if the terms of the Act of 1844 be thought incapable of embracing the loan in question, it comes within the very words of the Act of 1854. It is evidenced by " bonds or certificates of loans," and these were issued by a railroad company incorporated by this Commonwealth, and such securities, says the Act of 1854, are and shall be liable to taxation for state purposes only.

There is no possibility of mistaking the legislative will in this regard. It may be a reasonable or unreasonable exercise of will, but that it is clearly expressed is past all doubt. And it is final. The power of taxation, which is the corner-stone of the government, is lodged exclusively with the legislature, and depends wholly on the discretion of that department. A wanton abuse of it might be arrested by the judicial arm ; but such an interference could proceed only on the ground that the legislature had transcended their legislative functions, and enacted something more than a tax law. So long as they confine themselves to that which is in the nature of a tax law, their powers are subject to no judicial review : they are only responsible to the people.

2 P. F. SMITH—10

Second, as to the non-residence of the holder of the loan. It is undoubtedly true that the legislature of Pennsylvania cannot impose a personal tax upon the citizen of another state, but the constant practice is to tax property within our jurisdiction which belongs to non-residents. Our land-taxes have always been imposed without regard to the domicil of the owner, and so have the taxes of stocks in banks and other incorporated companies. Stocks and loans are personal property, and the domicil of the owner determines the rights of succession to such property, though its *situs* at the time of his death determines the right of administration, but the legislative power of taxation does not depend upon these distinctions. There must be jurisdiction over either the property or the person of the owner, else the power cannot be exercised; but where the property is within our jurisdiction, and enjoys the protection of our state government, it is justly taxable, and it is of no moment that the owner who is required to pay the tax resides elsewhere. The duties of sovereign and subject are reciprocal, and any person who is protected by government in his person or property may be compelled to pay for that protection: Hood's Estate, 9 Harris 114. In the case of the West Chester School District *v.* Darlington, 2 Wright 157, effect was given to an Act of Assembly which taxed property held here in trust for non-resident minors.

The principle of taxation as the correlative of protection, perfectly just in itself, is as applicable to a non-resident as to a resident owner, because civil government is essential to give value to any form of property, without regard to the ownership, and taxation is indispensable to civil government. What would this plaintiff's loan be worth if it were not for the franchises conferred upon the company by the Commonwealth, franchises which are maintained and protected by the civil and military power of the Commonwealth? Is it not apparent that the intrinsic and ultimate value of the loan as an investment rests on state authority—that it is the state which made it property and preserves it as property? Then it would seem that this kind of property, more than any other, ought to contribute to the support of the state government. And I suppose it is upon this ground that the legislature discriminates between corporation loans and private debts as objects of taxation. The artificial debtor, itself a creature of the legislative power, and all its functions derived from legislative grant, is so dependent upon the government, it lives and moves and has its being so entirely by the favour of the government, that not only what it owns, but what it owes also, is thought fit to be taxed, whilst only the possessions of the natural person, and not his debts, are taxed.

But, it may be said, and indeed was urged in argument, that the plaintiff's loan as personal property follows his person, and is

property for all purposes only in the place where he has his domicil. For some purposes, as already intimated, it is undoubtedly subject to the law of the domicil, and yet in a very high sense it is also property here in Pennsylvania. It was admitted in argument that corporation stocks are property here though owned beyond our jurisdiction, and this is a necessary consequence of the final ruling which a long-vexed question in the Supreme Court of the United States received in the case of The Ohio and Mississippi Railroad Company v. Wheeler, 1 Black 256, where it was held that stockholders in railroad companies become presumptively citizens of the state which creates the corporation. Property has been defined to be the right or interest which one has in lands or chattels, and so domestic is this peculiar species of property that it domesticates the owner. But loans are not stocks, and yet the loans and stock of a railroad company resemble each other in many respects. Both are subscribed under the authority of a special law, and both are so far capital that they are employed for the same general purposes. The certificate of stock, which the plaintiff as a citizen of Rhode Island may hold for shares in this company, is mere paper evidence of property existing here; it is not the thing signified, it is only evidence of it. Is the bond which the plaintiff holds anything more? He cannot enforce it where he lives; he must come here to gather its fruits. It is founded upon and derives its value from a mortgage, but that mortgage is here, and the franchises and properties which the mortgage binds are here within our jurisdiction. The bond signifies his right to receive so much money out of the mortgaged estate, but that estate not only belongs to our jurisdiction, but was in part created by our authority, and the power to raise the mortgage, like all the franchises of the company, were conferred by state authority.

Now, although loans and stocks are distinguishable for many purposes, yet the legislature committed no very great solecism in treating loans as taxable property within our jurisdiction. The tax may be thought to be extravagant, especially in view of the taxation to which the owner is exposed in the place of his residence, but that is a consideration for legislative attention. The point we rule upon this part of the case is, that corporation loans, though in some sense mere debts, are like moneys at interest, taxable as property, and moneys at interest have long been taxed in Pennsylvania.

Third. Has the company the right to deduct the tax from the coupons? The 3d sect. of the Act of 30th April 1864, Purdon 1378, provides that "every president, treasurer or cashier, or other officer of any company, incorporated or that may hereafter be incorporated, which pays interest to its depositors, bondholders or other creditors, upon which by the laws of this Commonwealth

[Maltby *v.* Reading and Columbia Railroad Co.]

a state tax is imposed, shall, before payment of the same, retain from said depositors, bondholders or other creditors, the amount of state tax imposed by existing laws, and shall pay over the same to the state treasurer," &c. The purpose of this Act of Assembly was not to *impose* a tax, but to prescribe a mode. of *collecting* a tax, and the tax referred to as the tax to be retained and paid over to the state treasurer is a tax upon interest accruing to bondholders or other creditors. But the three-mill tax is imposed not on the interest but on the principal of the plaintiff's bond. Here is a discrepance, undoubtedly, but it is more verbal than substantial. Taking the Act of 1864 in connection with the prior acts to which I have referred, and reading them as parts of a legislative system for aiding the revenues of the Commonwealth, they amount to this and no more, that the three-mill tax shall be assessed upon the par value of the corporation loan, and shall be retained by the corporation officers out of the accruing interest therein. The verbiology of Acts of Assembly passed at different times, though in pursuit of a common object, is very apt to be ambiguous and inartificial, and there is not more difficulty in reconciling the terms of these several acts than we are accustomed to encounter, but we must not allow a too strict adherence to the words of the enactment to defeat the intent of the legislature. In other words, the acts being *in pari materia*, must be so construed as to give due effect to each. It is in this way only that we can reach an intelligible conclusion, and this is the mode by which we arrive at the above-stated result that the taxation of the bond is to be deducted from the accruing interest. If the Act of 1864 be not applied to this tax upon the principal debt, there is no tax to which it is applicable.

But this it is said violates the faith of the obligation, and renders all such legislation void. The argument is, that the company have contracted to pay so much interest to the plaintiff, and the legislature cannot relieve them from this obligation. How far modern tax laws shall be permitted to impair and alter private contracts is a great question, which must be decided ultimately by the Supreme Court of the United States. I have my own private opinions, which would probably be found to differ from a majority of this court, but I do not think it worth while to discuss the constitutionality of these Pennsylvania statutes, whilst the country acquiesces in the excise law of the general government, under the operation of which the same question might be frequently raised. For instance, a section of the excise law of 1864 authorized manufacturers who had existing contracts for the delivery of manufactured goods at the date of the law, to add the increased duties to the contract price and collect them from the vendee, and this is now done. So far as I know, no question has been raised under that law upon the inviolability of contracts,

and perhaps the sound conclusion is that governmental taxation, a thing always to be anticipated when contracts are made, does not impair the obligation of contracts, within the meaning of the constitutional inhibition. If this be conceded as a principle, then the mode of collecting the tax, whether by a government agent, a debtor corporation or manufacturer, is mere machinery, and involves no principle whatever. For the present therefore, and speaking for the court, I lay it down that the Acts of Assembly, to which I have referred, are constitutional and valid; that they tax the loan as property found here in Pennsylvania, and that they appoint the debtor corporation the collector of that tax for the benefit of the state government.

It may be added that we have not overlooked, though we have not cited, the opinion of Ch. J. Chase, in the case of Jackson *v.* The Northern Central Railway, lately decided in the Circuit Court of the United States for the district of Maryland, wherein the learned chief justice reached a different conclusion from those above expressed, but it is apparent from his opinion that he was unfamiliar with our tax laws, and overlooked altogether the Act of 1854. Doubtless counsel failed to bring it to his notice.

The decree at Nisi Prius dismissing the plaintiff's bill is affirmed.