## Philadelphia, Appellant, *v.* Depuy.

Argued January 4, 1968. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Richardson Dilworth* and *Solomon Fisher*, with them *Dilworth, Paxson, Kalish, Kohn & Levy*, for company, appellant.

*Matthew W. Bullock, Jr.*, Second Deputy City Solicitor, with him *Edward G. Bauer, Jr.*, City Solicitor, for City of Philadelphia, appellants.

*Daniel W. Long*, Borough Solicitor, for borough, appellant.

*Edward T. Baker,* Deputy Attorney General, with him *Edward Friedman,* Counsel General, and *William C. Sennett,* Attorney General, for appellee.

OPINION BY MR. JUSTICE ROBERTS, August 6, 1968:

This litigation centers around one paragraph of the Act of June 1, 1889, P. L. 420, §23, as amended, 72 P.S. §2181 (Supp. 1967). The act generally imposes an annual tax of 14 mills on the gross receipts of certain enumerated utilities; the section directly involved in this litigation exempts from taxation the gross receipts of municipally owned or operated public utilities to the extent that these gross receipts are derived from business done inside the limits of the municipality. Municipal *gas* companies, however, are denied this exemption by the language of the act. As a result, appellants Philadelphia Gas Works and Chambersburg Gas Department attacked the amended Act of 1889, claiming (1) that the act is unconstitutional because it violates the uniformity clause of the Pennsylvania Constitution, Article IX, §1 and the Fourteenth Amendment of the United States Constitution; (2) that it violates the prohibition in the Pennsylvania Constitution against local or special laws, Article III, §7; (3) that the Philadelphia Gas Works, being municipally owned *and* operated should be exempt; and (4) that the act really does not tax any municipal utilities.

The case presently comes before us for the second time. In our first decision, *Philadelphia v. Smith,* 412 Pa. 262, 194 A. 2d 177 (1963), we found against appellants on all but their first contention. On this classification issue, however, we remanded the case to the court below for further testimony on whether there existed any real differences between municipal gas and electric companies to justify different tax treatment for the two. As a result of a second decision adverse to appellants, the case is here again.

We start with the well-established proposition that one seeking to show a statute unconstitutional must carry a very heavy burden. This doctrine was most recently reiterated in *Commonwealth v. Life Assurance Co. of Pennsylvania,* 419 Pa. 370, 214 A. 2d 209 (1965), appeal dismissed for want of a substantial federal question, 384 U.S. 268, 86 S. Ct. 1476 (1966), where we held that although there must be some reasonable basis for distinguishing one taxable from another, it is the allegedly aggrieved taxpayer who must demonstrate the lack of such basis. "All doubt is to be resolved in favor of sustaining the legislation." *Milk Control Comm'n v. Battista,* 413 Pa. 652, 659, 198 A. 2d 840, 843 (1964); *Anstine v. Zoning Bd. of Adjustment,* 411 Pa. 33, 190 A. 2d 712 (1963). Moreover, the taxpayer's burden will be deemed met only if the challenged statute *"clearly, palpably* and *plainly* violates the Constitution." *Daly v. Hemphill,* 411 Pa. 263, 271, 191 A. 2d 835, 840 (1963) (Emphasis in original.); *Chartiers Valley Joint Schools v. Allegheny Cty. Bd. of Sch. Directors,* 418 Pa. 520, 546, 210 A. 2d 487, 501 (1965). The court below found that appellants failed to carry their heavy burden of showing that there existed *no* reasonable basis for distinguishing gas from electric companies. We agree.

Appellants presented but three witnesses. The first of these, a former State Senator, testified as to his own recollection of the events surrounding the passage of the act, concluding that gas companies were taxed discriminatorily. There can be no doubt that this testimony was both irrelevant and improper. The remaining two witnesses, both experts, testified concerning the increasing competition between gas and electric companies. Even admitting, however, that these two utilities perform substantially similar functions and are frequently in competition, this is not enough to show that the classification for taxing purposes is

unreasonable. We realize that gas and electric companies (along with coal and oil companies) compete, for example, in the area of space heating. But, as this Court said in *Life Assurance,* supra, "the Legislature may distinguish for purposes of taxation activities which are sufficiently unique despite the fact that the subjects so taxed are but one segment of a larger class engaged in similar activity. [citing cases.]" 419 Pa. at 380, 214 A. 2d at 216. See also *Heisler v. Thomas Colliery Co.,* 274 Pa. 448, 118 Atl. 394 affirmed, 260 U.S. 245, 43 S. Ct. 83 (1922).

Apart from the similarity of functions, it cannot be gainsaid that gas and electricity are distinct power sources, each sufficiently unique to sustain separate tax treatment. In fact, classifications arguably far less reasonable on their face than this one have already been sustained by our Court. See, e.g., *Philadelphia v. Samuels,* 338 Pa. 321, 12 A. 2d 79 (1940) (different tax treatment for open parking lots and closed parking garages); *Heisler v. Thomas Colliery Co.,* supra (different tax treatment for anthracite and bituminous coal).

Accordingly, the decree of the court below is affirmed. Each party to pay own costs.

———

DISSENTING OPINION BY MR. JUSTICE COHEN:

In our earlier disposition of this case, *sub nom. Philadelphia v. Smith,* 412 Pa. 262, 194 A. 2d 177 (1963), we remanded it to the lower court for the presentation of additional factual data regarding the differences between gas and electric companies which would permit or deny different gross receipts tax treatment. Otherwise, we rejected the arguments made by the City of Philadelphia and the United Gas Improvement Company.

The purpose of our remand was to enable the parties and the lower court to make some rational dis-

position of the argument that the classification involved is unreasonable (i.e., in imposing tax upon gross receipts of municipal gas companies and not upon those of municipal electric companies) by viewing more closely whether or not such distinctions as exist between the two types of companies are reasonably related to and justify different tax treatment. We had no intention of ruling on the validity of the distinction or of shifting the appellants' burden of proof in such a case, and we do not perceive that anything we said did so.

On remand appellants presented testimony to the effect that the gas and electric industries have become increasingly alike in recent years, both in purpose and operation. In addition, they offered testimony from a former State Senator indicating that the statutory amendment in question was aimed solely at exacting tax revenue from the Philadelphia Gas Works in order to balance the budget and was not founded on any legislative consideration of a difference in the gas works from nongas municipal utilities but only on a deliberately discriminatory scheme.

No additional evidence was offered by the Commonwealth. The lower court then determined that the classification was reasonably related to a different tax treatment and upheld the statute.

On the present state of the record there is little, if anything, to support the classification made in the statute; or, to put this conclusion in proper perspective, appellants have shown that no meaningful differences related to a different tax policy exist. However, since our previous decision, this Court has dealt with the same constitutional problem in a different context and decided it in such a way as to reject such considerations. This is what the majority now holds although it does not clearly so state.

In *Commonwealth v. Life Assurance Company of Pennsylvania*, 419 Pa. 370, 214 A. 2d 209 (1965), appeal dismissed, 384 U.S. 268 (1966), we ruled flatly that in testing the constitutional validity of a revenue-raising statute, we need *not* find some reasonable relation between the classification contained in the statute and its purpose in order to uphold it. 419 Pa. 370, 377, 214 A. 2d 209, 214-15. We ruled that it was necessary only that some reasonable distinction exist between who is taxed and who is not taxed even if that distinction is unrelated to the purpose of a tax statute. Furthermore, we indicated our belief that the current view of the United States Supreme Court is in agreement with this position and rejected the taxpayer's reliance upon such decisions as *Quaker City Cab Co. v. Commonwealth*, 277 U.S. 389, 48 S. Ct. 553, 72 L. ed. 927 (1928),[1] and *Concordia Fire Ins. Co. v. Illinois*, 292 U.S. 535, 54 S. Ct. 830, 78 L. ed. 1411 (1934).[2] I disagree with this conclusion and believe that these decisions remain good law, imposing the same requirements on a distinction made in a tax statute as in any other kind of statute.

I do, however, agree with the majority's comment on the legislative witness. Although by this late date one would have been justified in assuming that resort to the legislative debates and the like is an improper evidentiary procedure in passing upon the validity of a Pennsylvania statute,[3] appellants in this case never-

---

[1] See 419 Pa. 370, 382, 214 A. 2d 209, 217 n. 15.

[2] See 419 Pa. 370, 386, 214 A. 2d 209, 219.

[3] Statutory Construction Act, Act of May 28, 1937, P. L. 1019, §51, 46 P.S. §551. As long ago as *Bank of Pennsylvania v. The Commonwealth*, 19 Pa. 144 (1852), in an opinion authored by Chief Justice JEREMIAH SULLIVAN BLACK, the Court unanimously held that in construing an act of the legislature it did not look to what occurred when it was on passage through the legislature. Such evidence is "not only of no value but it was delusive and dangerous." More recently in *Martin Estate*, 365 Pa. 280, 74 A. 2d

theless refer to the discussions on the floor of the legislature and even put on the witness stand a former member of the State Senate who was personally cognizant of the activities that led to the enactment of the legislation in question. Such evidence is irrelevant and improper and should not have been entertained.

I dissent.

---

120 (1950), Mr. Justice BELL (now Chief Justice) wrote ". . . in ascertaining the legislative meaning while what is said in debate is not relevant, the report of a legislative commission . . . may . . . be considered."