Frank E. Heller, Williamsport Municipal Water Authority, Williamsport Sanitary Authority *v.* Warner M. Depuy, Secretary of Revenue of the Commonwealth of Pennsylvania, Robert P. Casey, Auditor General of the Commonwealth of Pennsylvania, William Sennett, Attorney General of the Commonwealth of Pennsylvania, Grace Sloan, State Treasurer of the Commonwealth of Pennsylvania.

Argued March 1, 1971, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MANDERINO, MENCER and ROGERS.

*Robert C. Riethmuller,* with him *William H. Markus, Victor Lynch* and *Clyde Williamson,* for plaintiffs.

*Eugene J. Anastasio,* Deputy Attorney General, with him *J. Shane Creamer,* Attorney General, for defendants.

OPINION BY JUDGE KRAMER, May 19, 1971:

This case is within the original jurisdiction of the Commonwealth Court. It was instituted by the filing of a Complaint in Equity on May 8, 1970, in the Court of Common Pleas of Dauphin County—Commonwealth Docket, and after this Court became officially organized by the Proclamation of the Governor, the matter was transferred to this Court for disposition.

The complaint seeks to restrain the taxing and revenue officials of the Commonwealth of Pennsylvania from enforcing the provisions of the "Public Utility Realty Tax Act", Act of March 10, 1970, P. L.    , Act No. 66, 72 P.S. 3271 (hereinafter referred to as Act No. 66). This Act imposes a state tax of 30 mills (adjustable) on certain real estate owned by public utilities, the revenues from which are to be paid into the State Treasury; and, under a formula set forth in the Act, thereafter to be distributed back to reporting local taxing authorities. Act No. 66 specifically states that the legislative intent is that the tax imposed ". . . shall be in addition to any tax now or hereafter imposed upon the gross receipts of public utilities . . .", that it should not be construed to constitute a ". . . replacement for or a repealer of . . ." the Gross Receipts Tax Act* (Act of June 1, 1889, P. L. 420, as amended).

---

* For an excellent history of the development of this Act and most of its 21 different legislative amendments, see *Philadelphia v. Dougherty,* 77 Dauphin 158 (1961).

In its definitions, Act No. 66 sets forth in Section 2: "(b) 'Public Utility' means any person, partnership, association, corporation or other entity furnishing public utility service under the jurisdiction of the Pennsylvania Public Utility Commission or the corresponding regulatory agency of any other state or of the United States; and any electric cooperative corporation, municipality or municipality authority** furnishing public utility service. . . ." By the Act of December 2, 1970, P. L. , (Act No. 273), the Legislature added the following words to the above definition: ". . . but shall not mean any public utility furnishing public utility sewage services."

Because of the amendatory language last mentioned, one of the plaintiffs in this law suit, viz., Williamsport Sanitary Authority, became exempt from the tax under Act No. 66, and therefore the issues presented by the Sanitary Authority are rendered moot and will not be considered in this opinion.

This is the first law suit brought to test the constitutionality of Act No. 66, which was enacted as a result of the 1968 Pennsylvania Constitutional amendment found in Article VIII, Section 4, which reads as follows: "Section 4. The real property of public utilities is subject to real estate tax imposed by local taxing authorities. Payment to the Commonwealth of gross receipts taxes or other special taxes in replacement of gross receipts taxes by a public utility and the distribution by the Commonwealth to the local taxing authorities of the amount as herein provided shall, however, be in lieu of local taxes upon its real property which is used or useful in furnishing its public utility service.

---

** The Statutory Construction Act, at 46 P.S. 601 (70.1) sets forth the following definition: " 'municipality authority' or 'municipal authority', a body corporate and politic created pursuant to the act, approved the second day of May, one thousand nine hundred forty-five (Pamphlet Laws 382) . . ."

The amount raised annually by such gross receipts or other special taxes shall not be less than the gross amount of real estate taxes which the local taxing authorities could have imposed upon such real property but for the exemption herein provided. This gross amount shall be determined in the manner provided by law. An amount equivalent to such real estate taxes shall be distributed annually among all local taxing authorities in the proportion which the total tax receipts of each local taxing authority bear to the total tax receipts of all local taxing authorities, or in such other equitable proportions as may be provided by law. Notwithstanding the provisions of this section, any law which presently subjects real property of public utilities to local real estate taxation by local taxing authorities shall remain in full force and effect."

On November 23, 1970, all of the parties to this action entered into a stipulation of facts and agreement to dispense with a trial by jury (in accordance with the Act of April 22, 1874, P. L. 109); and the case was submitted to the Court for determination on the merits.

### FINDING OF FACTS

From the record and the stipulation of facts, the Court finds: (1) Frank E. Heller, the individual-plaintiff, is a holder of bonds issued by the Williamsport Municipal Water Authority (corporate-plaintiff).

(2) The Williamsport Municipal Water Authority was incorporated June 6, 1946, and exists under and by virtue of the "Municipality Authorities Act", Act of May 2, 1945, P. L. 382, 53 P.S.

(3) The City Council of the City of Williamsport appoints the members of the board of the corporate-plaintiff.

(4) The corporate-plaintiff supplies water to customers in and about the city of Williamsport together with certain surrounding areas.

(5) The corporate-plaintiff has issued bonds pursuant to two indentures: (a) the first indenture, dated July 1, 1947, covering $5,750,000 worth of bonds and (b) an indenture dated April 1, 1950 covering bonds in the amount of $500,000. Both of these issues are subject to a second supplemental indenture dated September 1, 1966. All of the bonds (a portion of which are still outstanding) were incurred for the purpose of financing construction and operation of the water system.

(6) The amount of water revenue bonds issued by the corporate-plaintiff outstanding and unpaid as of June 30, 1969, was $3,587,732.50, and as of June 30, 1970, was $3,397,000.00.

(7) Each of the four defendants herein is charged under the laws of the Commonwealth of Pennsylvania with certain obligations and duties with regard to the collection, auditing and handling of tax revenues of the Commonwealth and are necessary parties to the instant suit.

(8) All municipal authorities incorporated under the Act of May 2, 1945, P. L. 382, operating water systems, have been advised by the Department of Revenue that they are liable to and subject to the terms of the Public Utility Realty Tax Act, Act No. 66, *supra,* and that they were ordered to file a return on or before June 1, 1970, together with payment of the tax imposed.

(9) The corporate-plaintiff timely filed with the Department of Revenue the required forms, and later filed an amended return showing the tax due, but not paid, under the Public Utility Realty Tax Act in the amount of $55,583.00.

(10) The corporate-plaintiff does not carry a depreciation account in its books and records, and the assets of it are carried on its books at cost until discharged at retirement.

(11) On September 22, 1970, the Bureau of Corporation Taxes of the Department of Revenue notified transportation authorities existing under the Municipality Authorities Act of 1945, *supra*, and transportation authorities formed pursuant to the Metropolitan Transportation Authorities Act, Act of August 14, 1963, P. L. 984, that they also were subject to the tax imposed by the Public Utility Realty Tax Act, Act No. 66, *supra*.

(12) On September 22, 1970, the Bureau of Corporation Taxes of the Department of Revenue notified various water cooperatives that they were likewise subject to the Public Utility Realty Tax Act, Act No. 66, *supra*.

(13) As of June 30, 1970, the corporate-plaintiff had approximately 17,000 customers, paying revenues of $696,000 and, statistically, in order to raise the $55,-583 in taxes imposed by the Public Utility Realty Tax Act, *supra*, on the average, each residential consumer of the corporate-plaintiff would incur an additional charge of about $2.16 per year.

## DISCUSSION

The plaintiffs in their broad attack on Act No. 66, *supra*, charged that the Act violates:

(1) The public utility real estate tax and exemption clause of Article VIII, Section 4 of the Pennsylvania Constitution;

(2) The uniformity clause of Article VIII, Section 1 of the Pennsylvania Constitution;

(3) The impairment of contracts clause of Article I, Section 17 of the Pennsylvania Constitution, and Article I, Section 10 of the United States Constitution;

(4) The due process clause of Amendment 14, Section 1 of the United States Constitution;

(5) The Municipality Authorities Act of 1945.

In addition, the plaintiffs argue that the Act is unconstitutional because it is vague, indefinite, or uncertain, and lacks administrative provisions for the enforcement and permits the Commonwealth to collect and retain taxes without constitutional authority.

The Pennsylvania Supreme Court has set down many times the guidelines for the courts of this State to follow in cases where parties attempt to have a statute declared unconstitutional.

In *Loomis v. Philadelphia School District Board of Education,* 376 Pa. 428, 431, 103 A. 2d 769, 770, 771 (1954), the court said: "Nothing but a clear violation of the Constitution will justify the judiciary in nullifying a legislative enactment. Every presumption must be indulged in its favor, and one who claims an act is unconstitutional has a very heavy burden of proof . . . When a statute is challenged as prohibited special legislation, the reasonableness of the challenge made is for the Legislature in the first instant; the duty of the court is limited to considering whether the Legislature had any reasonable ground for making it. . . ."

In *City of Philadelphia v. Depuy,* 431 Pa. 276, 279, 244 A. 2d 741, 743 (1968), we find: "We start with the well-established proposition that one seeking to show a statute unconstitutional must carry a very heavy burden. This doctrine was most recently reiterated in Commonwealth v. Life Assurance Company of Pennsylvania, 419 Pa. 370, 214 A. 2d 209 (1965) . . . where we held that although there must be some reasonable basis for distinguishing one taxable from another, it is the allegedly aggrieved taxpayer who must demonstrate the lack of such basis. All doubt is to be resolved in favor of sustaining the legislation (citing many cases). . . . Moreover, the taxpayer's burden will be deemed met only if the challenged statute *clearly, palpably* and *plainly* violates the Constitution. Daly v. Hemphill, 411 Pa. 263, 271, 191 A. 2d 835, 840 (1963)." (Emphasis added.)

We will rule on and discuss each of the issues raised by the plaintiffs mentioned above *seriatim.*

1. *With the exception of Section 4(a), Act No. 66 does not violate Article VIII, Section 4 of the Pennsylvania Constitution.*

The framers of the 1968 constitutional amendment, Article VIII, Section 4, had a twofold purpose. First, it was intended to provide the local taxing bodies with increased tax revenues by utilizing the tax exemption on public utilities' public service real estate.* Secondly, it was intended to provide for a legislative formula to distribute real estate tax revenue equivalents represented by this exemption on some equitable basis whereby one municipality, where public utility property was located, would not receive a windfall of additional tax revenues to the detriment of other municipalities which might use the services rendered by the public utility, but where no substantial utility real estate was located.

This constitutional provision, however, in effect, reestablishes (after removing it in the first sentence) the exemption on such realty so long as the state gross receipts taxes or its replacement** remain payable by public utilities.

---

* The exemption of public utility realty from local real estate taxes was developed in a line of Pennsylvania Supreme Court decisions holding that the grant of the power of eminent domain by the Legislature is "official recognition" that the business of the grantee is so vital to the public welfare that it is engaged in the administration of a public trust and therefore is entitled to the classification of a quasi-public corporation and on that basis entitled to exemption from local taxation on its realty devoted to the public service. See *Independence Township School District Appeal*, 412 Pa. 302, 194 A. 2d 437 (1963). Also see *Exemption of Real Property on Public Utilities From Local Taxation in Pennsylvania*, 13 University of Pittsburgh Law Review, 263 (1952).

** The word "replacement" was inserted in Article VIII, Section 4, obviously for the purpose of maintaining the effectiveness of this constitutional provision if for some unforeseen event the gross

There can be no question that the gross receipts taxes are in no way repealed or affected by Act No. 66. The enumerated public utilities in the Gross Receipts Tax Act, *supra,* which, by the way, are the only persons or organizations which pay any state gross receipts taxes, will continue to pay the same as they did before Act No. 66, and therefore the exemption from local real estate taxes continues.

Article VIII, Section 4, then states that the ". . . amount raised annually by such gross receipts or other special taxes . . ."*** are not to be less than the equivalent of local real estate taxes which would be collected locally except for the exemption; and such equivalent amount shall be distributed back to the municipalities under some equitable legislative formula.

Although it may appear strange, the wording of Article VIII, Section 4, does not restrict the revenues to be distributed to the reporting local taxing authorities to only the gross receipts tax, or its replacement. It says, "An amount equivalent to such real estate taxes shall be distributed annually. . . ." There is no restriction on where that "amount" comes from, so long as it does come and so long as there is a state gross receipts tax, or its replacement.

The Statutory Construction Act, Act of May 28, 1937, P. L. 1019, Section 51, 46 P.S. 551, provides direction to a court interpreting legislation wherein it says: "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions. When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the

---

receipts tax was changed or replaced by some other tax on public utilities. .

*** In this third sentence of Article VIII, Section 4, the Constitution does not mention "in replacement" thereof.

pretext of pursuing its spirit. When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters —(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be obtained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such law."

Although neither the constitutional provisions, here in question, nor Act No. 66 is clearly drawn, it seems obvious to us that the Legislature intended to (1) keep the gross receipts tax on the enumerated public utilities, thereby continuing, in effect, the local tax exemptions; (2) add a new "special" state realty tax onto those same public utilities, together with additional other persons and organizations* rendering utility type services, but not paying state gross receipts taxes, the revenues from which would also be paid into the State Treasury, and (3) provide a formula for distributing the local real estate tax equivalent from "other special" taxes back to the reporting local taxing authorities.

Confusion was created when the Legislature attempted, in Section 4(a)** of Act No. 66, to apply the "special" tax created by the Act to the second sentence of Article VIII, Section 4, by providing that it was

---

* Article VIII, Section 4, does not define "public utilities", nor does it mention municipal authorities, such as the corporate-plaintiff in this case. Act No. 66 does define the term and includes the corporate-plaintiff in this case.

** Section 4(a). Payment of the tax imposed by section 3, and the distribution to local taxing authorities prescribed by section 7, shall be in lieu of local taxes upon utility realty, as contemplated by Article VIII, Section 4, of the Constitution of Pennsylvania.

"in lieu of local taxes upon utility realty". This the Legislature could not do.

Article VIII, Section 4, mandates that only the existing state gross receipts taxes paid by the utilities, or its replacement (which Section 8* of Act No. 66 specifically says it is not) may be used "in lieu of" (or, in effect, to create an exemption from) local realty taxes. Since the new "special" tax created by Act No. 66 does not replace the gross receipts taxes, Section 4(a) of Act No. 66 must be declared to be unconstitutional.

This, however, does not void the remaining portions of Act No. 66. Under the Statutory Construction Act, *supra*, Section 55, 46 P.S. 555, it is provided: "The provisions of every law shall be severable. If any provision of a law is found by a court of record to be unconstitutional and void, the remaining provisions of the law shall, nevertheless, remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so depend upon, the void provision, that it cannot be presumed the Legislature would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent." We hold that the remaining provisions of Act No. 66 are complete, standing alone, and carry out the legislative intent. Further, we hold under the above-stated analysis, that Act No. 66 meets the constitutional mandate of Article VIII, Section 4.

---

* Section 8. It is the legislative intent that the tax imposed by this act shall be in addition to any tax now or hereafter imposed upon the gross receipts of public utilities under the act of June 1, 1889 (P. L. 420) and this act shall not be construed in any manner as to constitute a replacement for or a repealer of the above cited act.

Plaintiffs argue that because Article VIII, Section 4 states that "Payment to the Commonwealth of gross receipts taxes or other special taxes in replacement of gross receipts taxes by a public utility . . ." the Legislature was without power to impose *any* other tax so as to include a municipal authority except one which replaces the gross receipts tax. We believe this argument is without merit. Certainly there can be no question that before the passage and adoption of Article VIII, Section 4, of the Constitution, the Legislature had the power to levy taxes on municipal authorities. If the Legislature could do it then, it can do it now.

We note further that Article VIII, Section 2(a) (iii) of the Constitution says: "The General Assembly may by law exempt from taxation: (iii) That portion of public property which is actually and regularly used for public purposes; . . ." This section makes it clear that the Legislature controls the exemption on all public property actually and regularly used for public purposes such as the property of the corporate-plaintiff here.

It seems obvious to us that one of the purposes behind Act No. 66 was the realization of the Legislature that there were persons, corporations, and organizations rendering public utility services in this Commonwealth which were not paying gross receipts taxes. (Once again it should be remembered that only certain public utilities pay the state gross receipts taxes.) Therefore the Legislature, in its wisdom, intending to provide additional tax revenues to local taxing bodies, fully intended *to include certain of those organizations rendering public utility service, but not paying gross receipts taxes,* in its formula to distribute tax revenues back to the local taxing authorities. We find nothing in the Constitution which would prohibit the Legislature from carrying out this plan.

Next, the plaintiffs argue that because Article VIII, Section 4, mentions "public utilities", the Legislature could only apply that provision to what was commonly accepted within the term "public utilities", that is, those persons and organizations subject to the jurisdiction of the Public Utility Commission. There can be no question that the Legislature has the power to define and redefine terms such as "public utility", and that is exactly what they did in Section 2(b) of Act No. 66. In that section, when the Legislature added to the usual definition the words "and any electric cooperative corporation, municipality or municipality authority furnishing public utility service, but shall not mean any public utility furnishing public utility sewage services", everyone, including this Court, was bound by that definition.

As was pointed out in the footnote above, municipal*ity* authority or municipal authority can be used interchangebly, and it is not misleading or vague for the Legislature to have used the word "municipal*ity*" (emphasis added). We believe the Legislature realistically created this new tax on those organizations rendering public utility services which were not paying the gross receipts tax to the State. In this way, the local taxing bodies would more realistically recover, from the Commonwealth Treasury, those real estate taxes on public utility realty which they will not collect because of the constitutional exemption.

2. *Act No. 66 does not violate the uniformity clause of Article VIII, Section 1 of the Pennsylvania Constitution.*

That article reads as follows: "Section 1. All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." This identical language is also found in the prior Pennsylvania Constitution of 1874.

The charge of lack of uniformity is often used by irate taxpayers who face a new tax. Quite understandably taxpayers are upset if they notice that some other citizen or organization with comparable interest is either not paying the tax or is paying a tax at a different rate or level. The law has never put the Legislature in a straitjacket so as to compel the adoption of absolutely equal taxation. The Constitution must give discretionary power to the Legislature to select the subject or classification of subjects to be taxed. So long as that classification and the regulations in the taxing legislation are not purely fanciful, or arbitrary, or capricious and are founded upon some reasonable basis or distinction, the tax will not be declared to be a violation of the uniformity clause. See *Philadelphia v. Smith,* 412 Pa. 262, 194 A. 2d 177 (1963), and *Philadelphia v. Depuy,* 431 Pa. 276, 244 A. 2d 741 (1968).

In the case of *Commonwealth v. Lukens,* 312 Pa. 220, 228, 167 A. 167, 171 (1933), Mr. Justice MAXEY ruled that there was not a lack of uniformity in a case where the Legislature had imposed an eight mills tax on the gross receipts from intrastate business of transportation companies and specifically excepted taxicabs, motor buses and motor omnibuses. He said: "There are sufficient reasons grounded in public policy to repel the imputation of arbitrariness in making the classification now challenged, though it may also be conceded that there is room for differences of opinion as to the wisdom or justice of the classification, but it must be borne in mind that the courts in passing upon questions like this, sit in judgment not on legislative wisdom but on legislative power."

In the case of *State Board of Tax Commissioners of Indiana v. Jackson,* 283 U.S. 527, 537, 51 S. Ct. 540, 543 (1931), Mr. Justice ROBERTS on behalf of the United States Supreme Court said: "The power of taxation is fundamental to the very existence of the government

of the States. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation. . . ." The Court went further and said: "The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction, . . . If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law. It is not the function of this Court . . . to consider the propriety or justness of the tax. . . . Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately classified. Such differences need not be great."

In the case of *Sablosky v. Messner*, 372 Pa. 47, 52, 53, 92 A. 2d 411, 414 (1952), the court said: "It is true that where a statute is so vague, indefinite and uncertain that the courts are unable to determine with any reasonable degree of certainty what the Legislature intended, or is so incomplete and conflicting and inconsistent in its provisions that it cannot be executed, it will be declared inoperative: (citing cases) . . . legislation should not be held invalid on the ground of uncertainty, if susceptible of any reasonable construction that will support and give it effect. . . . An act will not be declared inoperative and ineffectual on the ground that it furnishes no adequate means to secure the purpose for which it is passed, if common sense and reason can devise and provide the means, and all the instrumentalities necessary for its execution are within the reach of those entrusted therewith. (citing cases) In Howarth v. Gilman, 365 Pa. 50, 73 A. 2d 655, at page 57, we stated the rule that is applicable here: 'It is settled law that legislation will not be held invalid

on the ground of uncertainty, if susceptible of any reasonable construction that will support and give it effect.' "

In *Estate of James Donnelly*, 113 Pa. Super. 274, 277, 278, 173 A. 876, 877 (1934) which is a case where legislation exempted from local taxation certain depositors' accounts bearing interest in banks and permitting taxation of others, the court said: "There must be no lack of uniformity in classification and there must be a real distinction between the objects; the legislative judgment is binding upon the courts unless they can point out that the classification adopted is purely fanciful and arbitrary and no substantial or logical basis exists therefor; there may be a variety of differences in taxation of proposed businesses, trades, callings or occupations; discrimination in favor of certain classes does not make an act arbitrary if it is founded upon a reasonable distinction; and the selection and classification of the subjects for taxation are, generally speaking, exclusively within the control of the Legislature, the only restriction being that there must be no discrimination between the members of the same class."

In the case of *Commonwealth v. Life Assurance Company of Pennsylvania*, 419 Pa. 370, 376, 214 A. 2d 209, 214 (1965), the court said: "By necessity a wide discretion must be conceded to the Legislature in the classification of various businesses or occupations for purposes of taxation. State Board of Tax Commissioners of Indiana v. Jackson, 283 U.S. 527, 537, 51 S. Ct. 540, 543 (1931); Brown Forman Company v. Kentucky, 217 U.S. 563, 30 S. Ct. 578 (1910); . . . Heisler v. Thomas Colliery Company, 274 Pa. 448, 118 A. 394 (aff'd.) 260 U.S. 245, 43 S. Ct. 83 (1922). The equal protection clause imposes no iron rule of equality prohibiting that degree of flexibility and variety appropriate to reasonable schemes of taxation. Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 525, 79 S. Ct.

437, 440 (1959)." Further, the Court said at page 377, "The only constitutional limitation placed upon the power of the Legislature to distinguish between various entities for purposes of taxation is that their basis for doing so be reasonable. (citing cases) . . . And the burden of showing that the classification employed by the Legislature is not reasonable is upon the party attacking the tax. (citing cases) . . . Especially is this so in light of the often reaffirmed rule that . . . [legislation] will not be declared unconstitutional unless it *clearly, palpably,* and *plainly* violates the Constitution."

The court in *Chicago, Burlington and Quincy R. Company v. McGuire,* 219 U.S. 549, 569, 31 S. Ct. 259, 263 (1911), stated: "Whether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance."

In this case, the Legislature has seen fit to define public utilities and to bring within that definition certain enumerated organizations, and further to exempt, specifically, sewer authorities. According to the record, the Department of Revenue sent out letters to certain other cooperatives and organizations which are not a party to this suit. We do not specifically rule on whether or not any other authorities are within or without the purview of Act No. 66. What we do rule is that the classification made by the Legislature clearly included the corporate-plaintiff (Water Authority) in a reasonable manner, and therefore Act No. 66 is not in violation of the uniformity clause for that reason.

With respect to the argument made by the plaintiffs that Act No. 66 is not uniform because of the

depreciation section, we believe that this argument is without merit. Section 2(d) of Act No. 66 reads as follows: " 'State taxable value' means the cost of the utility realty, less reserves for depreciation and depletion, as shown by the books of account of a public utility; Provided that for any public utility which was not required to record annual depreciation on its utility realty prior to enactment of Section 503 of the Public Utility Law, the depreciation deduction prescribed in this definition shall be the book reserve or 50 percent of the book cost, whichever is greater."

As we read this definition there is no restriction upon the corporate-plaintiff to establish a reasonable and realistic book reserve. There are many methods to determine accrued depreciation, and the courts in Pennsylvania have recognized such methods in many Pennsylvania cases. See *City of Pittsburgh v. Pennsylvania Public Utility Commission*, 178 Pa. Super. 46, 112 A. 2d 826 (1955) and *City of Pittsburgh v. Pennsylvania Public Utility Commission*, 208 Pa. Super. 260, 222 A. 2d 395 (1966). The Legislature in effect has given the taxpayer "public utility" the option to determine whether to establish book reserves or utilize the 50 percent method. In those cases where the property has been purchased for a nominal sum or is a gift, this matter is curable by the same method used on other real estate taxes. Certainly no one would contend that a real property owner in Pennsylvania need not pay any real estate taxes because the realty came into his possession through a gift. Obviously, there must be a reasonable appraisement to determine the reasonable value of the realty. This appraisement is done on a regular basis by the county tax assessor's office in the 67 counties of Pennsylvania. Section 5 of Act No. 66 clearly establishes the procedure for the assessment and valuation of the real estate covered by the Act.

3. *Act No. 66 does not violate the impairment of contract clauses of the Pennsylvania and United States Constitutions.*

Plaintiffs argue that one of the contractual provisions made by the corporate-plaintiff to its bondholders, such as the individual plaintiff, was that the Commonwealth of Pennsylvania would not tax the Authority, and therefore to do so is an impairment of the contract with the bondholders. This is not so for a number of reasons.

In the case of *Maltby v. The Reading and Columbia Railroad Company,* 52 Pa. 140, 149 (1866), where a nonresident holder of bonds of the defendant company challenged the deduction for a tax on the stipulated interest, the court said: ". . . governmental taxation . . . does not impair the obligation of contracts within the meaning of the constitutional inhibition."

See *Commonwealth v. New York, L. E. and W. Railroad Company,* 150 Pa. 234 (1892). In *Stadtfeld Estate,* 359 Pa. 147, 154, 58 A. 2d 478, 482 (1948), the court said: "It is elementary that every contract is made with knowledge of the fact that the rights thereunder may be taxed by the sovereign power, and whatever obligations were assumed . . . remain unimpaired notwithstanding the subsequent imposition of the federal estate tax. . . ."

In anticipation of the problem, and for the purposes of giving notice to the bondholders of this corporate-plaintiff, there was included in the Trust Indenture: "Section 5.06. The Authority will pay, out of the revenues from the Water System, *all taxes* and assessments, if any, or other municipal or governmental charges lawfully levied or assessed upon the Water System, or any part thereof, or upon any receipts and revenues therefrom, when the same shall become due, and will duly observe and comply with all valid requirements of any municipal or governmental authority relative

to any such properties, and will not create or suffer to be created any lien upon such properties or any part thereof or upon the revenues therefrom, except the lien and charge of the Bonds secured hereby upon such receipts and revenues, and it will, but only out of said revenues, pay or cause to be discharged, or make adequate provision to satisfy and discharge, within sixty (60) days after the same shall accrue, any such lien or charge and also all lawful claims and demands for labor, materials, supplies or other objects which if unpaid, might by law become a lien upon such property thereof or the revenues therefrom; provided, however, that nothing in this Section shall require the Authority to pay or cause to be discharged, or make provision for, any such lien or charge, so long as the validity thereof shall be contested in good faith by appropriate legal proceedings and if the Authority shall have set aside on its books reserves deemed adequate by the Trustee with respect thereto."

Certainly the individual plaintiff cannot say in the face of Section 5.06 of the Trust Indenture that he was not aware or that he was not put on notice that it was possible for the corporate-plaintiff to become subject to taxation.

If there were no provisions for the Authority to increase its water rates to cover increased costs of operation, one of which is taxes, then there might be some merit to the argument that Act No. 66 somehow impaired contract rights; but clearly, Section 4.01 of the Trust Indenture and the Municipality Authorities Act of 1945 (Act of May 2, 1945, P. L. 382) at 53 P.S. 306 B(h) give the authority the power to adjust its water rates to recover any tax which might be levied against the property, or the operations, or the revenues of the corporate-plaintiff. With all of these protections provided, there can be no impairment of contract rights between the bondholders and this Water Authority.

4. *Act No. 66 is not so vague, indefinite or uncertain that it violates the provisions of the Constitution.*

First the plaintiffs argue that by virtue of the Legislature using "Municipa*lity* authorities" (emphasis added), one is unable to determine whether or not the Legislature intended to include all municipal authorities or only those authorities which come under the Municipality Authorities Act of 1945. As we have already pointed out, in the Statutory Construction Act, *supra*, "municipality authority" and "municipal authority" may be used interchangeably. It is clear to us that the Legislature intended to include all authorities which render a public utility service within its definition of "public utility", with the specific exception of sewer authorities. Secondly, plaintiffs point out that the Department of Revenue has sent out letters to certain cooperatives and authorities not specifically mentioned in the definition found in the Act. That question is not relevant to the issues presented by these plaintiffs, and we do not have sufficient facts on the record in this case to make any such determination on whether or not these other organizations may come within the definition of a "public utility". Thirdly, the plaintiffs argue that Act No. 66 is defective in that it does not allegedly provide for a method of enforcement. Even if this Court would have written the legislation in a different way, so long as the statute provides a method for collection and enforcement, it must be upheld. In Section 3 of Act No. 66, in subsection (c) we find: "Payment of the tax hereby imposed may be enforced by any means provided by law for the enforcement of payment of taxes to the state. . . ." We read this to mean that all those provisions of the Fiscal Code could be utilized by the Department of Revenue to enforce payment of this tax.

The argument of the plaintiffs that the Commonwealth may raise more tax revenues through the state

gross receipts taxes and the Act No. 66 taxes than the local real estate tax equivalent, and that this violates the constitutional provisions of Article VIII, Section 4, is without merit. Said constitutional provision does not restrict the Commonwealth to only the "equivalent". Therefore, so long as the equivalent is raised by the Commonwealth and distributed to the local taxing authorities each year as it is collected, as Act No. 66 does, then, it cannot be said to be unconstitutional because more than the equivalent is retained in the State Treasury for other state purposes.

5. *Act No. 66 does not violate the provisions of the Municipality Authorities Act of 1945.*

(1) Plaintiffs argue that the Municipality Authorities Act of 1945, as amended, *supra,* in 53 P.S. 318, provides an exemption from a taxation of all authorities. The section reads in part: ". . . and since such Authorities will be performing essential governmental functions in effectuating such purposes, such Authorities shall not be required to pay any taxes or assessments upon any property acquired or used by them for such purposes. . . ."

(2) Plaintiffs further refer to another section of the Municipality Authorities Act of 1945 (53 P.S. 316) as an argument that the State cannot levy any taxes on the corporate-plaintiff.

Changing conditions can change legislative intent. Constitutional changes may require a change in legislative intent. In this case, the Constitutional Convention of 1967-68 provided for a state method to tax the real estate of public utilities and distribute those tax revenues back to local taxing bodies. Even though the language of Article VIII, Section 4, may not be crystal-clear, the intent is discernible, so that when it was approved by the electorate it became a mandated directive to the Legislature to change the law. The Legislature has followed that mandate by Act No. 66. If, in

carrying out this mandate it changed its prior legislative intent, in the Municipality Authorities Act of 1945, it was doing so as the voice of the electorate. So long as the change does not violate some constitutional right (such as impairment of contract obligations referred to earlier in this opinion), authorities will have to live with the change. It seems to us this authority (the corporate-plaintiff) anticipated such change specifically in its Trust Indenture, as explained hereinbefore.

### SUMMARY

For the reasons set forth above, we hold that Act No. 66 does not violate any of the Pennsylvania or United States Constitutional provisions as alleged by the plaintiffs, and therefore we

### ORDER

That the Complaint in Equity be and it hereby is dismissed this 19th day of May, 1971.

Judge MANDERINO concurs in the result only.