Duquesne Light Company, Appellant, *v.* Board of Property Assessment, Appeals and Review of Allegheny County, Pennsylvania, Appellee.

The American Telephone and Telegraph Company, Appellant, *v.* Board of Property Assessment, Appeals and Review of Allegheny County, Pennsylvania, Appellee.

The Bell Telephone Company of Pennsylvania, Appellant, *v.* Board of Property Assessment, Appeals and Review of Allegheny County, Pennsylvania, Appellee.

West Penn Power Company, Appellant, *v.* Board of Property Assessment, Appeals and Review of Allegheny County, Pennsylvania, Appellee.

Board of Property Assessment, Appeals and Review of Allegheny County, Pennsylvania, Appellant, and County of Allegheny, Intervening Party-Appellant, *v.* The Bell Telephone Company of Pennsylvania, Appellee.

Board of Property Assessment, Appeals and Review of Allegheny County, Pennsylvania, Appellant, and County of Allegheny, Intervening Party-Appellant, *v.* West Penn Power Company, Appellee.

Board of Property Assessment, Appeals and Review of Allegheny County, Pennsylvania, Appellant, and County of Allegheny, Intervening Party-Appellant, *v.* The American Telephone and Telegraph Company, Appellee.

Board of Property Assessment, Appeals and Review of Allegheny County, Pennsylvania, Appellant, and County of Allegheny, Intervening Party-Appellant, *v.* Duquesne Light Company, Appellee.

42

43

Argued October 31, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. Nos. 167 C.D. 1972 and 217 C.D. 1972 reargued June 5, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

44

*Richard B. Tucker, Jr.*, with him *Donald P. Eriksen* and *Tucker, Arensberg & Ferguson,* for The American Telephone and Telegraph Company and The Bell Telephone Company of Pennsylvania. Of counsel, *Robert Coe, John B. King* and *Peter Pugliese.*

*David McNeil Olds,* with him *Frank W. Ittel, Edward W. Seifert* and *Reed, Smith, Shaw & McClay,* for Duquesne Light Company. Of counsel, *Thomas J. Munsch, Jr.*

*Daniel B. Dixon,* with him *Leon G. Krasinski* and *Rose, Schmidt & Dixon,* for West Penn Power Company.

*Francis A. Barry,* County Solicitor, with him *Thomas M. Rutter, Jr.,* Second Assistant County Solicitor, and *John G. Arch,* Assistant County Solicitor, for Board of Property Assessment, Appeals and Review.

*Albert J. Tomalis, Jr.,* with him *Metzger, Hafer, Keefer, Thomas and Wood,* and, of counsel, *Robert L. Nathanson,* for The American Telephone and Telegraph Company on reargument.

OPINION BY JUDGE KRAMER, January 12, 1973:

This case involves cross-appeals from an order of the Court of Common Pleas of Allegheny County, dated January 31, 1972. The final resolution of the case depends on the proper interpretation of Article VIII, Section 4 of the Pennsylvania Constitution of 1968 and the Public Utility Realty Tax Act, Act of March 10, 1970, P. L. 168, as amended, 72 P.S. §§3271 et seq., hereinafter referred to as "PURTA." The case consists of cross-appeals by Duquesne Light Company, The American Telephone and Telegraph Company (AT&T), The Bell Telephone Company of Pennsylvania and West Penn Power Company, all joined together as co-parties on one side of the issue presented. All of these, except AT&T, will be referred to hereinafter as "Utilities." As will be explained in the last section hereof, the appeals involving AT&T must be dealt with separately. On the other side of the issues are The Board of Property Assessment, Appeals and Review of Allegheny County, and the County of Allegheny, in its own right as a party appellant, as co-parties, hereinafter referred to as "County."

In the lower court order, the Utilities' (and AT&T's) appeals from the reclassification by the county of their real property used or useful in the furnishing of public utility service to the public from an "exempt" status to a "taxable" status for real estate tax purposes, were dismissed in part. In effect, the court's order held this "reclassified" property as taxable for the period from July 1, 1970, through December 31, 1970; however, the order thereafter held the "reclassified" property to be exempt for the year 1971,

and thereafter, ". . . so long as the appellant [Utilities] makes the annual tax payments due from it [them] under PURTA and provided distributions under PUR-TA or otherwise in conformance with the constitutional provisions, are made annually by the Commonwealth to the respective reporting local tax authorities."

We recognize, as do all of the parties to this case, that although only four public utilities are involved, the results herein will have far-reaching effect. The result of this case will determine whether public utilities and local real estate taxing authorities in this Commonwealth will pay or receive such tax revenues.

Prior to the appearance of the parties in court, the background for this case was set by the adoption of two fundamental changes in the law of this Commonwealth. The first occurred with the adoption, on April 23, 1968, of a new amendment to the Pennsylvania Constitution, as found in Article VIII, Section 4 (Pa. Const., art. 8, §4), which provides:

"§4. Public Utilities

"The real property of public utilities is subject to real estate taxes imposed by local taxing authorities. Payment to the Commonwealth of gross receipts taxes or other special taxes in replacement of gross receipts taxes by a public utility and the distribution by the Commonwealth to the local taxing authorities of the amount as herein provided shall, however, be in lieu of local taxes upon its real property which is used or useful in furnishing its public utility service. The amount raised annually by such gross receipts or other special taxes shall not be less than the gross amount of real estate taxes which the local taxing authorities could have imposed upon such real property but for the exemption herein provided. This gross amount shall be determined in the manner provided by law. An amount equivalent to such real estate taxes shall be distributed annually among all local taxing authorities

in the proportion which the total tax receipts of each local taxing authority bear to the total tax receipts of all local taxing authorities, or in such other equitable proportions as may be provided by law.

"Notwithstanding the provisions of this section, any law which presently subjects real property of public utilities to local real estate taxation by local taxing authorities shall remain in full force and effect." The "Schedule" annexed to this Section of Article VIII of the Constitution provides:

SCHEDULE

"Section four shall take effect July 1, 1970, unless the General Assembly earlier provides enabling legislation in accordance therewith."

The second change in the law occurred when the Legislature, intending to carry out the mandate of the aforementioned constitutional amendment, passed PURTA, which became effective March 10, 1970. Later, we will discuss in more detail, each of these two developments in the law.

Each of the Utilities (and AT&T) separately stipulated with the County a statement of the facts upon which the lower court issued its order. Each of the stipulations is similar, although obviously the statistics set forth therein are different for each. For the purposes of this opinion, the numbers contained in the statistics are unimportant, since the decision is based upon questions of law. Generally, the stipulations set forth that the real property of the Utilities (and AT&T) which the County has reclassified from "exempt" to "taxable" is used and useful in the rendering of public utility service to the public. On or before July 1, 1970, the County notified the Utilities (and AT&T) of the change in classification, for the tri-annual periods ending December 31, 1970, December 31, 1971, and December 31, 1972. The Utilities (and AT&T) paid the PURTA tax,

on or about June 1, 1970, to the Commonwealth for the year 1970,[1] and, as stated in a supplemental stipulation, each of the Utilities (and AT&T) also paid this tax for the entire year 1971. All of the Utilities (not AT&T, as explained hereinafter) also paid their entire state gross receipts tax under the Act of June 1, 1889,[2] P. L. 420, §23, as amended, 72 P.S. §2181 and 72 P.S. §8101, for the years 1970 and 1971. At this point, we should note that the public utilities enumerated in the statute are the only persons or organizations in the Commonwealth that pay this state gross receipts tax. It was also stipulated that the payment by the Utilities of the PURTA taxes for the years 1970 and 1971, together with the payment of the gross receipts taxes for those years, far exceed all of the real estate taxes which could have been levied by the County and local taxing authorities for those same years. Nonetheless, assuming the power to tax public utilities' real estate, local taxing authorities have filed tax liens (for non-payment of local real estate taxes) against Utilities' property.

It is the contention of the Utilities that by virtue of Article VIII, Section 4 of the Pennsylvania Constitution, the passage of PURTA, and the payment by the Utilities of the PURTA tax, together with their payment of the Pennsylvania gross receipt taxes, the County illegally and improperly reclassified their real estate and certified to the local taxing authorities that said reclassified real estate was taxable after July 1, 1970. The County, on the other hand, contends that PURTA is not an implementation of Article VIII, Section 4 of

---

[1] Section 3 of PURTA requires payment on or before June 1, 1970, 72 P.S. §3272.

[2] This Act was repealed and in effect reenacted by the "Tax Reform Code of 1971," Act of March 4, 1971, P. L.    , No. 2, Article XI, Sections 1101 and 1103, 72 P.S. §§8101 and 8103.

the Pennsylvania Constitution. Therefore the County surmises that the real property of the Utilities was properly reclassified as "taxable," and thereby subject to real estate taxation by the local taxing authorities.

At the risk of unduly burdening the reader, we believe that it is necessary to carefully analyze both the constitutional amendment of 1968, referred to herein, and PURTA. It is common knowledge that the purpose of the subject constitutional amendment was to provide a means of obtaining much-needed revenue for local taxing authorities through a scheme of distribution, based upon a real estate tax equivalent to local realty taxes applied to the real estate of public utilities, heretofore not taxed.[3] The drafters of the constitutional amendment provided this financial relief in such a manner so as not to provide a windfall to those local taxing authorities within whose boundaries the public utilities' real estate was located.

The first sentence of the constitutional amendment makes it clear that the real property of public utilities is subject to real estate taxes which may be imposed by local taxing authorities. However, the first sentence should not be analyzed in isolation. The second sentence is of equal importance. In effect, it reestablishes the exemption (which was removed in the first sentence) on such public utility realty, so long as the

---

[3] The exemption of public utility realty from local real estate taxes was developed in a line of Pennsylvania Supreme Court decisions holding that the grant of the power of eminent domain by the Legislature is "official recognition" that the business of the utility grantee is so vital to the public welfare that it is engaged in the administration of a public trust, and therefore is entitled to the classification of a quasi-public corporation, and on that basis entitled to exemption from local taxation on its realty devoted to the public service. *See Independence Township School District Appeal*, 412 Pa. 302, 194 A. 2d 437 (1963). *Also see Exemption on Real Property on Public Utilities From Local Taxation in Pennsylvania*, 13 University of Pittsburgh Law Review 263 (1952).

state gross receipts tax, or its replacement,[4] remains payable by public utilities. This Court so held in the case of *Heller v. DePuy,* 2 Pa. Commonwealth Ct. 196, 277 A. 2d 849 (1971), and the record in this case clearly establishes that the Utilities did pay the state gross receipts taxes for the years in question.

The third sentence of the constitutional amendment mandates that the amount raised by the state gross receipts taxes "or other special taxes" shall not be less than the gross amount of real estate taxes which the local taxing authorities could have imposed *"but for the exemption herein provided."* (Emphasis added.) This third sentence leaves no doubt that the Constitution reestablishes an exemption so long as "the amount" raised is sufficient to meet the mandate, and the record is again clear that "the amount" was more than that necessary to meet the mandate. It is of interest to note that the framers of the Constitution did not restrict the third sentence to just the state gross receipts taxes or the replacement thereof, but rather permitted "the amount" to also be raised by "other special taxes." We conclude that this constitutional amendment means that so long as "the amount" paid is equal to the mandate, the provisions of the third sentence are fulfilled.

The fourth sentence leaves to the discretion of the Legislature how that "gross amount" shall be determined. The fifth sentence states that the "amount equivalent to such real estate taxes shall be distributed annually among all local taxing authorities . . . *as may be provided by law."* (Emphasis added.) Here, the Constitution permits the Legislature to determine how,

---

[4] The word "replacement" was inserted in Article VIII, Section 4, obviously for the purpose of maintaining the effectiveness of this constitutional provision, if for some unforeseen event, the gross receipts tax was changed or replaced by some other tax on public utilities.

and in what proportions, the "amount" shall be distributed in accord with an equitable scheme.

In summary, then, we conclude that Article VIII, Section 4 of the Pennsylvania Constitution clearly continued the exemption of public utility real estate from local taxation so long as state gross receipts taxes or their replacement continue. Thereafter, the constitutional mandate merely sets forth that the minimum amount will be distributed in some equitable manner within the discretion of the Legislature. As we read this constitutional amendment, it would not have been necessary for the Legislature to have passed PURTA in order to comply with the amendment so long as the minimum "amount" was raised and equitably distributed by some discretionary legislative action.[5]

As stated before, the Legislature, intending to carry out the direction of the constitutional mandate, passed PURTA. We held in *Heller, supra,* that PURTA did not replace the state gross receipts taxes. Section 8 of PURTA specifically so provides.[6]

PURTA created an additional special tax. The revenues raised under PURTA are paid into the General Fund in the State Treasury. PURTA provides for a rate of thirty mills upon the taxable value (as defined in Section 2(d), 72 P.S. §3272(d)) on the realty of a public utility. It even provides for an additional

---

[5] It is obvious that the Legislature, faced with this constitutional mandate, passed PURTA so that the revenues derived from the state gross receipts taxes placed in the General Fund for Commonwealth purposes would not be reduced by state payments to the local taxing authorities of the local real estate tax equivalents.

[6] "Section 8. Legislative Intent. It is the legislative intent that the tax imposed by this Act shall be in addition to any tax now or hereafter imposed upon the gross receipts of public utilities under the Act of June 1, 1889 (P. L. 420), and this act shall not be construed in any manner as to constitute a replacement or a repealer of the above cited act."

payment by public utilities if the 30-mill rate does not equal the "realty tax equivalent" as determined by the Department of Revenue from the reports required to be filed by all local taxing authorities. *See* Sections 4(b) and 7(a)(2), 72 P.S. §§3274(b), 3277(a)(2).[7] It would appear from this record that the 30-mill rate did equal or exceed those realty tax equivalents. PURTA also establishes certain duties and responsibilities to be performed by the county tax assessors and the local taxing authorities. In Section 5(b), 72 P.S. §3275(b),[8] the assessors are required to "initially" assess public utilities' realty "on or before October 1, 1970." This duty was carried out by the Board of tax assessors of the County; and it is stipulated that the County had even assessed the realty of public utilities in Allegheny County before the effective date of PURTA. Section

---

[7] Section 4(b) provides: "(b) If in any calendar year the amount determined by the department pursuant to section 7(a)(2) shall exceed the total amount of tax collected pursuant to section 3(a), the department shall determine the ratio which the amount of such excess bears to the total state taxable value of all utility realty reported to it pursuant to section 3(b). The department shall notify each reporting public utility of such ratio, and it shall be the duty of such public utility, within forty-five days thereafter, to pay to the state treasurer, through the Department of Revenue, an additional amount of tax equal to the product of (1) such ratio and (2) the state taxable value shown in its report required by section 3(b). The provisions of section 3(c) shall be applicable to such additional amount of tax."

Section 7(a)(2) provides:

"(a) From the reports received by it in each year pursuant to section 6, the department shall determine:

"(2) The total realty tax equivalent shown in all such reports."

[8] Section 5(b) provides: "(b) Such utility realty shall be initially assessed on or before October 1, 1970 or within two months after the effective date of this act, whichever is later, and thereafter shall be assessed or reassessed at the same time and in the same manner as real estate."

6(a), 72 P.S. §3276(a),[9] of PURTA states that each local taxing authority shall submit to the Department of Revenue of the Commonwealth "on or before the first day of April 1971" a report containing certain required data. Section 6(b), 72 P.S. §3276(b), states: "(b) If a local taxing authority shall fail to file the report required by subsection (a) by the date therein prescribed, or within any extension granted by the department, it shall forfeit its right to share in the next-ensuing distribution made pursuant to section 7." Following the mandate of the constitutional amendment, the Legislature, as it was permitted to do within its discretionary powers, established certain conditions precedent to a local taxing authority's right to receive any of the tax benefits intended by the constitutional amendment. The record in this case indicates that none of the local taxing authorities has ever submitted the report required before any payment to the local taxing authorities can be made by the Commonwealth under PURTA. In view of the fact that the County had the assessment figures available, even prior to the effective date of the constitutional amendment (July 1, 1970) the local taxing authorities were not entitled to any payment of any benefit absent the filing of the necessary report. Furthermore, there is nothing in PURTA, nor in the subject constitutional amendment, which would prohibit any local taxing authority from submitting its report nunc pro tunc "within any extension granted by the department," and thereby permit it to collect the intended benefits of PURTA for the last six months of 1970, or for any other period, subsequent to the effective date of PURTA.

The lower court based its holding that the local taxing authorities could tax the Utilities' real estate for

---

[9] Section 6(a) provides: "(a) On or before the first day of April of 1971 and of each year thereafter, each local taxing authority shall submit to the department. . . ."

the last six months of 1970, on the theory that PURTA did not provide for "distribution" of the amounts equivalent to the local real estate taxes on public utilities' real estate during the year 1970. The lower court concluded that the Legislature had created a hiatus on the distribution of the amount, and therefore although it was unfortunate for the Utilities, they not only had to pay the PURTA tax, which they did, but they were also required to pay the real estate taxes to be imposed by the local taxing authorities. This would be an absurd result, which we are directed to avoid by Section 52 of the Statutory Construction Act, Act of May 28, 1937, P. L. 1019, 46 P.S. §552.

Our reading of PURTA leads us to conclude that the lower court erred in its interpretation of that Act. We first note that Section 7(b), 72 P.S. §3277(b),[10] of PURTA states: "*On or before the first day of October 1971. . . .*" (Emphasis added.) the Department shall distribute the amount. The Legislature created no restriction on the Department distributing monies before October 1, 1971, if all of the other requirements, such as the necessary reports of the local taxing authorities, had been met. To the date of this writing, we still do not know whether the Department would honor a request for the payment of PURTA benefits to the local taxing authorities if they complied with the PURTA provisions. There is nothing in the subject constitutional amendment requiring that payments be made to the local taxing authorities by any specific date. The mandate is that the amount shall be distributed among

---

[10] Section 7(b) provides: "(b) On or before the first day of October of 1971 and of each year thereafter, the department shall distribute to each reporting local taxing authority its share of the total realty tax equivalent determined pursuant to subsection (a)(2), which share shall be the ratio which the total tax receipts reported by that local taxing authority bear to the total tax receipts determined pursuant to subsection (a)(1)."

the local taxing authorities "as may be provided by law." Requiring these Utilities to pay the real estate tax both to the Commonwealth and again to the local taxing authorities, was never intended by the constitutional amendment, nor by the Legislature. The shallowness of the County's argument is highlighted by its admission to this Court that it indeed would be improper for the local taxing authorities to receive real estate taxes paid directly to the local taxing authorities and thereafter receive, albeit belatedly, payment under PURTA for the last six months of 1970. We ruled in *Heller, supra,* that PURTA was in compliance with the mandate of the subject constitutional amendment. We there ruled that PURTA is not a tax in replacement of the state gross receipts taxes, but rather was a special tax, as contemplated in the second and third sentences of the subject constitutional amendment. This special tax makes funds in the General Fund of the Commonwealth available for payment of the benefits contemplated by the Constitution to the local taxing authorities. Further proof of the weakness of the County's position, if any further proof were needed, is that for the County to be consistent, it would have to contend that if it (or any local taxing authority) failed to file the necessary reports with the Department, thereby not permitting the next ensuing distribution of the PURTA benefits, that this lack of distribution would make such public utility realty taxable. This would be a spurious result; the Utilities having already paid the state gross receipts and PURTA taxes.

The arguments of the Utilities that PURTA violates the uniformity clause have been adequately and fully discounted in our opinion in *Heller, supra.* Our conclusions in this case make it unnecessary for us to pass upon the question of whether the County could make a change in its classification or whether the local taxing authorities could change budgets in the middle of fiscal

periods. The court below was quite correct in its holding on these contentions, to wit, that they had no merit.

In summary then, we conclude, based upon the fact that the Utilities paid sufficient state gross receipts taxes and the special taxes provided for in PURTA during the subject years, that these taxes were in lieu of the real estate taxes payable to local taxing authorities. Therefore the real estate of these Utilities remained exempt on July 1, 1970, and will remain exempt so long as these taxes are paid. Having reached this conclusion, it necessarily follows that the Board of Property Assessment, Appeals and Review of Allegheny County improperly and illegally reclassified the Utilities' real property used and useful in its public utility service from "exempt" to "taxable". From that result it naturally follows that the tax statements and tax liens issued and filed by the local taxing authorities are null and void. We therefore hold that insofar as it applies to the three Utilities (excepting AT&T) the order of the court below is reversed as it applies to the period July 1, 1970, through December 31, 1970. As it applies to the three Utilities, the order of the lower court as it pertains to the period following December 31, 1970, is affirmed with one exception. The lower court was also in error in relieving the Utilities from the obligation of paying local real estate taxes after December 31, 1970, *solely* on the condition that "the appellant makes the annual payments due from it under PURTA and provided distributions under PURTA or otherwise in conformance with the constitutional provisions, are made annually by the Commonwealth to the respective reporting local taxing authorities." The reason for this last-mentioned exception is based upon our conclusion that the exemption of the Utilities' realty from local taxing authorities taxation is based upon the raising of an amount equivalent to the revenues which would otherwise be realized by such local taxation, whether

that amount comes from the gross receipts tax, or its replacement, or some other special tax levied by the Commonwealth for the purposes set forth in the subject constitutional amendment.

## AT&T

AT&T presents a different problem, necessitating a different result. The problem for AT&T is that, as we discern from the stipulation of facts submitted by AT&T (unlike the stipulations filed by the other Utilities), it does not pay the state gross receipts tax. Apparently, it is excluded from the payment of that tax because the statute (72 P.S. §2181 and 72 P.S. §8101) levies a tax on the gross receipts realized from telephone and telegraph messages "transmitted wholly within this State." We can find no case directly on point, but for the purpose of this opinion, we will assume AT&T does not pay the state gross receipts tax.

AT&T has stipulated it is a public utility ". . . as that term is defined in the Public Utility Law, Act of May 28, 1937, P. L. 1053, as amended (66 P.S. 1101 et seq.) and the Public Utility Realty Tax Act (PURTA), Act of March 10, 1970, P. L. (Act No. 66 of 1970), and within the meaning of Section 4, Article VIII, of the Constitution of the Commonwealth of Pennsylvania."

Following the legislative declarations found in Section 8 of PURTA, we have held in *Heller, supra,* and reiterated above, that PURTA is *not* a replacement of the state gross receipts tax. Therefore, AT&T does not qualify for the exemption provided for in Article VIII, Section 4 of the Pennsylvania Constitution of 1968. Reading the first two sentences of the subject constitutional amendment together results in the inescapable conclusion that AT&T's realty is taxable by the local taxing authorities since it pays no state gross receipts tax or a replacement thereof.

58

Initially this may seem to be unfair or inconsistent, but a review of the legislative intent brings about an understanding of the fairness of the situation. Section 2(b) of PURTA (72 P.S. §3272(b)) defines "public utility" as follows: "(b) 'Public Utility' means any person, partnership, association, corporation or other entity furnishing public utility service under the jurisdiction of the Pennsylvania Public Utility Commission or the corresponding regulatory agency of any other state or of the United States; and any electric cooperative corporation, municipality or municipality authority furnishing public utility service, but shall not mean any public utility furnishing public utility sewage services, or municipality or municipality authority furnishing public utility service." In Section 2(c) of PURTA (72 P.S. §3272(c)) we find the definition of utility realty, which reads as follows: "(c) 'Utility realty' means all lands, buildings, towers, smokestacks and other structures, located within this commonwealth and owned by a public utility either directly or by or through a subsidiary, which are used or are in the course of development or construction for use, in the furnishing, including producing, storing, distributing or transporting of public utility service; but shall not include (i) easements or similar interests, (ii) railroad rights-of-way and superstructures thereon, (iii) machinery, equipment, pole, transmission tower, pipe, rail or other lines, whether or not attached to such lands, buildings, towers, smokestacks or other structures, and (iv) such realty as is subject to local real estate taxes under any law in effect on April 23, 1968."

The Legislature obviously realized that state gross receipts tax was paid only by the public utilities statutorily enumerated (72 P.S. §2181 and 72 P.S. §8101). A municipal authority, such as was involved in *Heller*, *supra*, and AT&T, here, do not pay a state gross receipts tax. The whole purpose of the subject constitutional amendment was to obtain much-needed revenue for

local governmental bodies. In that spirit, the Legislature expanded the usual public utility source of revenue and levied the "special" PURTA tax on the realty of all persons and organizations rendering public utility service, without, in any way, affecting the state gross receipts tax.

For the past 83 years only those public utilities enumerated in the statute (72 P.S. §2181) paid the state gross receipts tax; while those persons or organizations rendering public utility service specifically exempt in the statute, or not mentioned, did not pay it. Our courts have steadfastly upheld such classifications as constitutional. (*See Heller, supra*) AT&T contends that Section 4 of PURTA provides that the PURTA tax "shall be in lieu of all local taxes on utility realty" and therefore the Legislature granted the exemption contemplated by the subject constitutional amendment. This contention cannot stand in view of our holding in *Heller, supra,* where we held that only the payment of the state gross receipts tax, or its replacement, would meet the constitutional requirements needed to qualify for the exemption.

By virtue of our holding herein, AT&T must pay local realty taxes and also the PURTA tax. This is not double taxation any more than all owners of realty in this Commonwealth pay both municipal and school realty taxes on the same realty. The question of fairness is answered when one realizes that AT&T will pay both the state PURTA and local realty taxes (but no state gross receipts tax) ; and the other three Utilities (here involved) will pay a state gross receipts tax and a PURTA tax.

In conclusion, as the order of the lower court applies to AT&T, we affirm the said order as it pertains to the period July 1, 1970 to December 31, 1970, and we reverse said order as it pertains to the year 1971 and thereafter.

For the purpose of clarity we state that if it is ever determined that AT&T is subject to the state gross receipts tax, or its replacement, so that AT&T comes within the exemption contemplated in the subject constitutional amendment, then its realty will become exempt the same as the other Utilities here involved.

OPINION BY JUDGE KRAMER on reargument, August 29, 1973:

This opinion comes about as a result of a reargument granted to American Telephone and Telegraph Company (AT&T) based upon a prior opinion of this Court, filed January 12, 1973, in which we disposed of eight separate appeals.[1] *See Duquesne Light Co. v. Board of Property Assessment, Appeals and Review of Allegheny County, Pennsylvania,* 10 Pa. Commonwealth Ct. 41, 299 A. 2d 660 (1973).

The Board of Property Assessment, Appeals and Review of Allegheny County, Pennsylvania, and the County of Allegheny, in its own right, filed a Petition for Allowance of Appeal from the prior opinion of this Court involving the three public utilities, other than AT&T; and our Supreme Court, on April 4, 1973, denied the petition. (Pennsylvania Supreme Court allocatur docket No. 385-1973).

AT&T's reargument was held before this Court on June 5, 1973.[2] We have carefully read the briefs sub-

---

[1] The second docket number with respect to each utility listed below represents a cross-appeal by Allegheny County and the Board of Property Assessment, Appeals and Review of Allegheny County. Duquesne Light Company at Nos. 144 and 218 C.D. 1972; The American Telephone and Telegraph Company at Nos. 167 and 217 C.D. 1972; The Bell Telephone Company of Pennsylvania at Nos. 168 and 215 C.D. 1972; and West Penn Power Company at Nos. 198 and 216 C.D. 1972.

[2] Amicus curiae briefs were permitted to be filed on behalf of (1) Western Pennsylvania Water Company, Berwick Water Com-

mitted on reargument, studied the authorities cited, reviewed our prior opinion in light of the reargument, and conclude that we must reaffirm our prior opinion in toto, which opinion is made a part hereof by reference thereto. In summary, as it affects AT&T, our prior opinion held: (1) that Article VIII, Section 4, of the Pennsylvania Constitution of 1968 (adopted April 23, 1968), which became effective July 1, 1970, changed the basic law on the taxability of the real property of public utilities by local taxing authorities; (2) that this constitutional amendment, however, reestablished the exemption of such public utility realty for those public utilities which paid the State gross receipts taxes or other special taxes in replacement of gross receipts taxes; (3) that the Pennsylvania Public Utility Realty Tax Act, Act of March 10, 1970, P. L. 168, as amended, 72 P.S. §3271 et seq., (PURTA) was passed to meet the mandate of said constitutional amendment, but specifically by its own provisions, PURTA is not a replacement of the State gross receipts tax; (4) by virtue of *Heller v. DePuy*, 2 Pa. Commonwealth Ct. 196, 277 A. 2d 849 (1971), Section 4(a) of PURTA, which attempted to make the PURTA tax a tax in lieu of local governmental realty taxes, was void; (5) that AT&T, unlike the other three utilities involved in that case, did not pay State gross receipts taxes; and (6) that therefore AT&T did not qualify for the exemption (as did the other three utilities involved), and was liable for local governmental realty taxes from July 1, 1970.

Almost all of the issues raised by AT&T on reargument are adequately disposed of in our prior opinion and were mentioned in the petition for allowance of

pany, Norristown Water Company and Riverton Consolidated Water Company and (2) The Pennsylvania Members of the National Association of Water Companies.

appeal filed by the three other utilities on which our Supreme Court denied allocatur.

One of the reargument issues raised by AT&T is raised for the first time in this case. It was not mentioned in its petition on appeal to this Court, nor was it covered in its brief filed in conjunction with our prior opinion. This new issue, or afterthought, involves AT&T's contention that Article VIII, Section 2, of the Pennsylvania Constitution of 1968, permits the Legislature to exempt AT&T's realty from local taxation, which (as argued by AT&T) the Legislature did in Section 4(a) of PURTA. Our Supreme Court recently (July 2, 1973) in *Alco Parking Corporation v. City of Pittsburgh* (No. 90 March Term, 1973), 453 Pa. 245, 307 A. 2d 851 (1973) stated: "This Court has repeatedly emphasized, and it is now beyond cavil, that 'we will not review questions that were neither raised, tried, nor considered in the trial court.' " (Citations omitted.) This Court, likewise, will not now consider on reargument an issue which was never raised in the case. We will point out, however, that Section 4(a) of PURTA was held to be void in *Heller, supra,* and further that the very specific language of Article VIII, Section 4, of the Pennsylvania Constitution of 1968, set out in clear language that the real property of public utilities, after July 1, 1970, was subject to real estate taxes imposed by local taxing authorities. This section refined and made more specific (certainly more specific than the general language of Article VIII, Section 2) the real property subject to such taxation. Article VIII, Section 2, speaks of discretionary exemptions which may be provided by the Legislature for "[t]hat portion of public property which is actually and regularly used for public purposes." Moreover, we have found no case (and AT&T cites none), which ever said that the realty of a public utility is in fact "public property." All of

the cases cited by AT&T were cases where the courts refer to public utilities as being quasi-public corporations, certain of whose properties were exempt because of their use for public purposes. The Legislature has not specifically exempted public utility realty from taxation. The exemption evolved in a series of court opinions, as was noted in *Heller, supra,* and our opinion in this case, *supra.* Since the effective date of Article VIII, Section 4, of the Pennsylvania Constitution of 1968, the realty of public utilities must be dealt with on a different basis as mandated by that constitutional provision. AT&T's contention that its realty, as public utility realty, is "public property" "used for public purposes" must fail.

As we have already stated, Section 4(a) of PURTA was held void in *Heller, supra.*[3] We need not reiterate what we have said in our prior opinions. However, in passing, we must take note that AT&T insists upon pressing Section 4(a) of PURTA as the basis for an argument that the Legislature intended the PURTA tax to be in lieu of local taxes upon utility real property. We feel compelled to emphasize that AT&T conveniently ignores and refuses to acknowledge the last dozen words of Section 4(a) which read as follows: "(a) Payment of the tax imposed by section 3, and the distribution to local taxing authorities prescribed by section 7, shall be in lieu of local taxes upon utility realty, *as contemplated by article VIII, section 4, of the Constitution of Pennsylvania.*" (Emphasis added.) If the Legislature had placed a period after the word "realty," then there might be some merit to AT&T's contention. However, the Legislature emphatically stated its intention that Section 4(a) was "as contemplated" by the Con-

---

[3] The Utility Authorities, in *Heller,* filed a petition for allocatur with our Pennsylvania Supreme Court at No. 18, May Term, 1972, but this petition was voluntarily withdrawn by the parties.

stitution. Article VIII, Section 4 of the Constitution in no way permits the Legislature to provide for the exemption (sought by AT&T) in the manner set forth in PURTA. The only exception permitted by the Constitution would be if the PURTA tax was passed as a replacement of the gross receipts tax, which Section 8 of PURTA specifically precludes. Article VIII, Section 4 provides the exclusive means through which a public utility may have its realty exempted from local taxation.

AT&T lays its greatest stress upon its argument that the imposition of PURTA tax by the Legislature preempted any local taxation. AT&T cites many cases, all of which hold that the municipalities have no power to tax, unless that power has been granted to them by the State Legislature through an enabling act, and that even where municipalities have been given such powers, if the State has preempted the field in a specific area, then the municipalities have no power to tax within that area, despite the wording of the enabling act upon which they may rely. *See United Tavern Owners of Philadelphia v. Philadelphia School District*, 441 Pa. 274, 272 A. 2d 868 (1971). The defect in AT&T's argument is that in none of the cases cited was there a comparable constitutional provision, such as Article VIII, Section 4, of the Pennsylvania Constitution of 1968, which restricts the Legislature in the field of taxation.

Our Constitution is the absolute framework of government. Certainly there cannot be any argument that the Constitution may limit the power of the General Assembly, and that it may legislate on all subjects not forbidden by the Constitution. Article VIII, Section 4, makes it clear that local taxing authorities may tax the real property of public utilities subject only to the restrictions set forth therein. There is no constitutional

provision restricting the Legislature from also taxing the real property of public utilities. If there is any preemption issue involved in this case, AT&T has misplaced its emphasis. The preemption here involved is that the Constitution has preempted the field by permitting local taxing authorities to tax the real property of public utilities. The limited manner in which utility realty may be exempted from local taxation is expressly set forth in the Constitution. The Constitution controls. We reiterate that to be entitled to an exemption the Constitution requires that the utility pay the State gross receipts tax, or its replacement. As we have already noted, PURTA by its own specific provisions is not a replacement. If the Legislature desires to exempt all public utility realty from local taxation, then all it need do is make the State gross receipts tax applicable to all utilities or replace it with another tax. AT&T refers to the well known abhorrence of the law to "double taxation." However, as we stated in our prior opinion, real property in this Commonwealth already bears triple taxation in the form of municipal, school and county real property taxes. The additional burden of a fourth tax, i.e., the PURTA tax, is no more "double taxation" than the other realty taxes.

AT&T rehashes the argument that the word "replacement" found in Article VIII, Section 4, of the Constitution, and Section 8 of PURTA should be interpreted in two different ways. We have already discussed the meaning of the word "replacement" in these two sections in our prior opinion. We need only add that this Court has interpreted that word in a consistent manner. The Legislature in Section 8 of PURTA clearly states that the PURTA tax "shall not be construed in any manner as to constitute a replacement" for the State gross receipts tax. It is obvious to us that the Legislature intended the word "replacement" to be con-

sistent with that same word in the Constitutional amendment, inasmuch as the Legislature declared that it was intent in passing PURTA to carry out the provisions of Article VIII, Section 4, of the Pennsylvania Constitution of 1968.

Lastly, AT&T argues that local taxing authorities could not collect a tax based upon its utility property used in the public service because the Legislature had not passed additional enabling legislation subsequent to the effective date of Article VIII, Section 4 (July 1, 1970). The argument must fail for the reason that enabling legislation was in existence at the effective date of, and prior to, the constitutional amendment. The General County Assessment Law, Act of May 22, 1933, P. L. 853, as amended, 72 P.S. §5020-101 et seq. since its passage, has permitted the assessment of public utility real property. (See 72 P.S. §5020-201). The reason public utilities did not pay realty taxes to municipalities was because of the exemption created by court opinion (see *Heller, supra*). By virtue of the adoption of Article VIII, Section 4, when it became effective July 1, 1970, any exemption provided for public utility realty became exclusively controlled by the constitutional amendment. Therefore, on July 1, 1970, only those exemptions permitted by the Constitution became or remained effective. On that date the existing enabling legislation of the local taxing authority became the effective means through which the local taxing authority could levy and collect such taxes.

In summary then, we hold that none of the issues and arguments made on reargument persuade us to change in any manner our prior opinion. A reading of the briefs filed in reargument permits us to conclude that the major difficulties encountered by AT&T are found in the language of the constitutional amendment (Article VIII, Section 4) and PURTA. AT&T's real

argument should have been with the delegates to the Constitutional Convention, and now should be with the members of the General Assembly. This Court did not design or create the wording which causes AT&T's difficulty. This Court can only work with and interpret those provisions of the Constitution and the respective statutes applicable to the case. Because of the importance of this matter, we have spent considerable time analyzing words of the Constitution and the pertinent statutes, together with the arguments made by AT&T and the amicus briefs. Our study permits us to conclude that our prior opinion must stand as filed.