The Townships of Springdale and Wilkins, Plaintiffs, *v.* Robert P. Kane, Secretary of Revenue, Robert P. Casey, Auditor General, Israel Packel, Attorney General, and Grace M. Sloan, State Treasurer, of the Commonwealth of Pennsylvania, Defendants.
The School Districts of Deer Lakes and Allegheny Valley, The Townships of Springdale, Wilkins and Harmar, The Borough of Cheswick, all political subdivisions of the Commonwealth of Pennsylvania, Plaintiffs, *v.* Robert P. Kane, Secretary of Revenue, and Robert P. Casey, Auditor General, and Israel Packel, Attorney General, and Grace M. Sloan, State Treasurer, of the Commonwealth of Pennsylvania, Defendants.

256

Argued September 10, 1973, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*Franklyn E. Conflenti*, with him *David R. Cashman,
Cauley, Birsic & Conflenti, Charles F. Hodel, Jr.,* and
*Smith, Hodel & Means,* for plaintiffs.

*William H. Smith,* Deputy Auditor General and
Chief Counsel, with him *Craig R. Burgraff,* Deputy
Counsel, for defendant, Casey.

*Vincent X. Yakowicz,* Special Assistant Attorney
General, with him *Gerald Gornish,* Deputy Attorney
General, *Melven R. Shuster,* Deputy Attorney General,
and *Israel Packel,* Attorney General, for remaining de-
fendants.

OPINION BY JUDGE KRAMER, December 4, 1973:

CASE DOCKETED No. 341 C.D. 1973

This matter comes within the original jurisdiction of this Court. The action was commenced by the filing of a Complaint in Equity by Springdale Township and Wilkins Township (Townships), both of Allegheny County, on behalf of themselves and of all local taxing authorities of the Commonwealth, similarly situated, against the Secretary of Revenue, the Auditor General, the Attorney General, and the State Treasurer of the Commonwealth of Pennsylvania. The complaint, after noting the provisions of Article VIII, Section 4 of the Pennsylvania Constitution of 1968 pertaining to the taxation of the real property of public utilities, and the distribution of real estate tax equivalents to local taxing authorities, alleges that the General Assembly of the Commonwealth on March 10, 1970, enacted the Public Utility Realty Tax Act (PURTA), the Act of March 10, 1970, P. L. 168, 72 P.S. §3271, et seq. as compliance with said constitutional provisions. The Townships then alleged that the defendants, through their agents, servants, agencies and employes, collected approximately $29,300,000 from the imposition of the PURTA tax, but that in violation of the constitutional mandate, and based upon a claim that Section 7(b) (72 P.S. §3277(b)) of PURTA was unconstitutional as written, the defendants had failed to pay to the local taxing authorities any portion of the $29,300,000 representing the imposition of the PURTA tax for the period March 10, 1970 through December 31, 1970. The Townships also allege that the said $29,300,000 was still on deposit with the Commonwealth. The complainants also note that the PURTA tax monies collected for the years 1971 and 1972 were partially disbursed to the local taxing authorities.

The Townships, in their prayer, request this Court to order the defendants to distribute the monies collected under PURTA, in accordance with the provisions of PURTA, for the calendar year 1970 to all local taxing authorities in the Commonwealth, that counsel fees be awarded, and an accounting be made by the defendants.

The Secretary of Revenue, the Attorney General, and the State Treasurer filed joint preliminary objections in the nature of a demurrer stating that the payment due the local taxing authorities for the year 1970 had been paid in 1971, that PURTA made no provision for payment in 1970, and that the Townships' complaint was barred because of sovereign immunity. They also raised the objection that this Court did not have jurisdiction over the recovery of funds collected as taxes, and, lastly, charged the Townships with laches inasmuch as the complaint had not been filed for a period in excess of two years after a claim could have been made. The Auditor General filed separate preliminary objections in which he demurred for the reason that there are no specific allegations charging that he has any power with reference to the PURTA tax. The Townships filed preliminary objections to the preliminary objections of the Auditor General on the basis that the Auditor General had not filed his preliminary objections until some 33 days after service of the complaint. The reason for the Auditor General's delay was that he had filed a motion to drop the Auditor General as a party defendant, which motion had been denied by an order of this Court some 27 days after the service of the complaint upon the Auditor General. Under the provisions of Pennsylvania Rules of Civil Procedure Nos. 1026 and 126 whereby the Court is given the discretion to disregard a defective procedure which does not affect the substantial rights of the parties, we will overrule the preliminary objections of the Townships

to the preliminary objections of the Auditor General. *See Paulish v. Bakaitis,* 442 Pa. 434, 275 A. 2d 318 (1971) ; *Fisher v. Hill,* 368 Pa. 53, 81 A. 2d 860 (1951), and *McKay v. Beatty,* 348 Pa. 286, 35 A. 2d 264 (1944).

PRELIMINARY OBJECTIONS OF THE AUDITOR GENERAL

The only basis upon which the Auditor General has filed his preliminary objections is that there is no statutory or constitutional duty imposed upon the Auditor General with regard to the distribution of the PURTA tax dollars. Article VIII, Section 10 of the Pennsylvania Constitution of 1968 states: "The financial affairs of any entity funded or financially aided by the Commonwealth, and all departments, boards, commissions, agencies, instrumentalities, authorities and institutions of the Commonwealth, shall be subject to audits made in accordance with generally accepted auditing standards." Furthermore, Section 402 of The Fiscal Code, Act of April 9, 1929, P. L. 343, as amended, 72 P.S. §402, provides:

"Except as may otherwise be provided by law it shall be the duty of the Department of the Auditor General to make all audits of transactions after their occurrence, which may be necessary, in connection with the administration of the financial affairs of the government of this Commonwealth, with the exception of those of the Department of the Auditor General. It shall be the duty of the Governor to cause such audits to be made of the affairs of the Department of the Auditor General.

"At least one audit shall be made each year of the affairs of every department, board, and commission of the executive branch of the government, and all collections made by departments, boards, or commissions, and the accounts of every State institution, shall be audited quarterly." It seems clear that the Auditor General is empowered to review, audit and account for the monies received by the Commonwealth and to assure all citizens

of the Commonwealth that the monies received are distributed in accordance with the law. At this point in this proceeding, we are not determining whether or not the Commonwealth received the PURTA money or whether it properly distributed those monies. The case before us is on preliminary objections in the nature of a demurrer; therefore, we must accept as true all of the properly pleaded allegations of fact. *See Balsbaugh v. Rowland*, 447 Pa. 423, 290 A. 2d 85 (1972). The allegation is that the Commonwealth received $29,300,000 of PURTA money which the Legislature intended to be distributed each year, as collected, to local taxing authorities and that this was not done. In view of the fact that the Auditor General obviously has responsibilities in connection with the constitutional mandate and the legislative scheme of distributing PURTA tax dollars, the Auditor General may have a duty, and therefore, his preliminary objections must be overruled.

PRELIMINARY OBJECTIONS OF THE ATTORNEY GENERAL, SECRETARY OF REVENUE AND STATE TREASURER

The Attorney General, representing himself and the Secretary of Revenue and State Treasurer, attempts to use his preliminary objections as an answer for he avers that the PURTA tax dollars which were collected during the year 1970 were actually paid to the local taxing authorities. We again reiterate this case is before us on preliminary objections in the nature of a demurrer, and we must accept as true all of the properly pleaded averments of fact found in the complaint. *See Balsbaugh v. Rowland, supra.* Thus, we must assume for the purposes of the disposition of the preliminary objections that the money was received by the Commonwealth and that it was not paid out to the taxing authorities. Next, the Attorney General argues that the Legislature did not require the distribution of PURTA monies prior to October 1, 1971, and that therefore the

Commonwealth properly paid out monies thereafter. The section of PURTA on which the Attorney General relies is Section 7(b), which reads: "On *or before* the first day of October of 1971 and of each year thereafter, the department shall distribute to each reporting local taxing authority its share of the total realty tax equivalent determined pursuant to subsection (a)(2), which share shall be the ratio which the total tax receipts reported by that local taxing authority bear to the total tax receipts determined pursuant to subsection (a)(1)." The Attorney General conveniently forgets the second and third words of that section. From Section 7(b) we find the legislative intent to grant authority to pay the PURTA money before the first day of October 1971, if all the other provisions of the Act had been met by the local taxing authorities. At this point in the proceeding of this case, we do not know whether or not the local taxing authorities have met all of the provisions of PURTA. Therefore, as a matter of law, we cannot dismiss the complaint on the preliminary objections so based.

The Attorney General also argues that the preliminary objections should be sustained because Article VIII, Section 4 of the Pennsylvania Constitution of 1968 was not self-executing. We fail to follow the argument of the Attorney General in this point for the reason that PURTA was passed before the effective date of Article VIII, Section 4, and the Legislature thereby implemented the Constitutional provision, with appropriate legislation. This Court so held in *Heller v. Depuy*, 2 Pa. Commonwealth Ct. 196, 277 A. 2d 849 (1971).

The Attorney General next argues that the preliminary objections should be sustained because of sovereign immunity. The Commonwealth defendants contend that if the plaintiffs prevail the Commonwealth would incur "an unforeseen liability" which is prohibited by Article I, Section 11 of the Pennsylvania Constitution

of 1968, wherein it is stated that the Commonwealth cannot be sued without its consent. The law is quite clear that in trespass actions our Supreme Court has consistently held that the Commonwealth and certain of its officials are immune; e.g., most recently *see Brown v. Commonwealth of Pennsylvania,* 453 Pa. 566, 305 A. 2d 868 (1973). In the case of *Philadelphia Life Insurance Company v. Commonwealth,* 410 Pa. 571, 190 A. 2d 111 (1963), the Court clearly sets forth the general rules. It stated:

"In Georgia R. R. & Banking Co. v. Redwine, 342 U.S. 299, 72 S. Ct. 321, it was said: 'This Court has long held that a suit to restrain unconstitutional action threatened by an individual who is a state officer is not a suit against the State. [Citing cases.]' . . ."

" '. . . it is an equally generally recognized rule that an action against state officers, attacking the constitutionality of a statute of the state, to enjoin them from enforcing an unconstitutional law . . . is not a suit against the state, and is not prohibited as such under the general principles of immunity from suit accorded to states.'

. . . .

"The distinction is clear between suits against the Commonwealth which are within the rule of its immunity and suits to restrain officers of the Commonwealth from enforcing the provisions of a statute claimed to be unconstitutional. Suits which seek to compel *affirmative action on the part of state officials* or *to obtain money damages or to recover property from the Commonwealth* are within the rule of immunity; suits which simply seek *to restrain state officials* from performing affirmative acts are not within the rule of immunity." (Emphasis in original.) 410 Pa. at 576, 190 A. 2d at 114.

Once again, keeping in mind that we are ruling on preliminary objections and with the above-quoted di-

rection of the Supreme Court, we conclude that the purpose of the instant suit is not to determine liability on the part of the Commonwealth or to obtain money damages, but rather to enforce a constitutional mandate as set forth in Article VIII, Section 4 of the Pennsylvania Constitution of 1968. The complaint in this case alleges that by virtue of the constitutional provision and PURTA, taxes were levied upon public utilities, the revenues from which statute the Commonwealth collected and holds such revenues for the period March 10 through December 31 of 1970, and which are mandated by the Constitution to be paid to local taxing authorities. The Commonwealth defendants argued in their brief that all of such funds have been completely dissipated or fully accounted for and paid in the following year. These facts may be an adequate defense, but at this point in the proceeding the record does not establish these assertions as facts. We are bound to accept the allegation of the plaintiffs that the money is held for the subject period, and has not been paid to the local taxing authorities. We cannot as a matter of law assume the assertions of the Commonwealth defendants. It is of prime importance to note that the plaintiffs are not seeking some affirmative action on the part of State officials required by statute, but rather that the affirmative action sought is mandated by the constitutional provision. There is precedent for such an action against Commonwealth officials for the wrongful distraint of monies due. See *Volunteer Firemen's Relief Association v. Minehart*, 415 Pa. 305, 203 A. 2d 476 (1964). We must also recognize that one of the allegations of the complaint asserts that Section 7(b) of PURTA is unconstitutional in that it does not provide for the payment of PURTA monies to the local taxing authorities during the year 1970. Although we tend to disagree with the plaintiffs on this point, we do not have a sufficient record from which we can de-

clare as a matter of law that the plaintiffs are incorrect. That being the case, equity does have jurisdiction to entertain the action. *See Philadelphia Life Insurance Company v. Commonwealth, supra.* In other words, if all of the allegations of the plaintiffs' complaint are adequately supported by substantial evidence, we hold that the complaint does state a cause of action.

The Commonwealth also contends that there are only two types of claim under the statutes whereby the Commonwealth has consented to suits; i.e., Section 1003 of The Fiscal Code, Act of April 9, 1929, P. L. 343, 72 P.S. §1003, and Section 1 of the Act of May 20, 1937, P. L. 728, as amended, 72 P.S. §4651.1 (involving the Board of Arbitration). The problem with this contention is that the Board of Finance and Revenue cannot determine the constitutionality of any provision of any statute. *Cf. Philadelphia Life Insurance Company v. Commonwealth, supra; Land Holding Corporation v. Board of Finance and Revenue,* 388 Pa. 61, 130 A. 2d 700 (1957) and *Federal Deposit Insurance Corporation v. Board of Finance and Revenue of Commonwealth,* 368 Pa. 463, 84 A. 2d 495 (1951). Under the facts alleged in the complaint, the Board of Arbitration is not involved. In other words, the plaintiffs' complaint does not set forth an action based upon a contract, or a tort, or a refund of taxes. The complaint clearly seeks enforcement of a constitutional mandate.

Lastly, the Commonwealth defendants assert preliminary objections based upon laches. The sense of this objection is that the plaintiffs filed suit on March 20, 1973, which is more than two years after the date which the plaintiffs claim the PURTA payments were due to the local taxing authority. "Laches arises when a defendant's position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against

[the defendant]." *Grote trust*, 390 Pa. 261, 269, 135 A. 2d 383, 387 (1957). *Also see Silver v. Korr*, 392 Pa. 26, 139 A. 2d 552 (1958). Once again, we must be reminded that the case is before us on preliminary objections. It has been asserted in the complaint that the Commonwealth collected the PURTA funds for the period March 10, 1970 through December 31, 1970, that those funds are being held by the Commonwealth, and that those funds were not paid to the local taxing authority in accordance with the constitutional mandate. On the present state of the record in this case, there is nothing which would permit us to rule as a matter of law that the Commonwealth has been prejudiced in any way by the delay of two years in filing this suit. Furthermore, we note that it has been only within the past year that this Court has had the opportunity to interpret PURTA in other cases. *See American Telephone and Telegraph Company v. Board of Property Assessment, Appeals and Review of Allegheny County*, 10 Pa. Commonwealth Ct. 41, 309 A. 2d 193 (1973) ; *Duquesne Light Company v. Board of Property Assessment, Appeals and Review of Allegheny County*, 10 Pa. Commonwealth Ct. 41, 299 A. 2d 660 (1973).

In summary then, we hold that all of the preliminary objections of all of the Commonwealth defendants must be overruled.

CASE DOCKETED NO. 477 C.D. 1973

This case also comes within the original jurisdiction of this Court. The complaint filed at this docket number contained two causes of action. The first cause of action was filed in behalf of the School District of Deer Lakes on behalf of itself and all other local taxing authorities similarly situated (numbering approximately 400 for the year 1971 and 90 for the year 1972) which did *not* file the reports required of all local taxing

authorities under Section 6 of PURTA.[1] The basis of this first cause of action is that the forfeiture provision of Section 6 is unconstitutional in that it violates the alleged mandated provisions of Article VIII, Section 4 of the Pennsylvania Constitution of 1968. Deer Lakes requests this Court to order the defendants to distribute all revenues collected by the Commonwealth under PURTA for the years 1971 and 1972 to those local taxing authorities which did not file such reports.

The alternative and second cause of action was filed by the Townships of Springdale, Wilkins and Harmar and the Borough of Cheswick and the Allegheny Valley School District against the same defendants seeking an order requiring the payment of all monies collected by the Commonwealth under the provisions of PURTA and retained by the Commonwealth due to the forfeiture by those local taxing authorities which did not file the reports. The sense of this cause of action is that *all* monies collected by the Commonwealth under PURTA should be paid to the local taxing authorities which did

---

[1] Section 6, 72 P.S. §3276 provides:

"(a) On or before the first day of April of 1971 and of each year thereafter, each local taxing authority shall submit to the department:

"(1) The name and address of each public utility owning utility realty within its jurisdiction, and the assessed value of such utility realty.

"(2) Its real estate tax rate for its current fiscal year.

"(3) The realty tax equivalent, which is the assessed value of clause (1) multiplied by the tax rate of clause (2).

"(4) Its total tax receipts for its last completed fiscal year.

"(5) Any adjustment to the assessed values, tax rates, realty tax equivalents or total tax receipts previously reported pursuant to clauses (1) to (4).

"(b) If a local taxing authority shall fail to file the report required by subsection (a) by the date therein prescribed, or within any extension granted by the department, it shall forfeit its right to share in the next-ensuing distribution made pursuant to Section 7."

file the necessary reports under the mandate of Article VIII, Section 4 of the Pennsylvania Constitution of 1968.

The Secretary of Revenue, the Auditor General, the State Treasurer and the Attorney General filed preliminary objections in the nature of a demurrer whereby it is asserted that because of the admission of Deer Lakes that it did not submit timely reports for the years 1971 and 1972, and because the remaining local taxing authorities in the second cause of action do not allege that they did not receive their full share of the total realty tax equivalent under the formula set forth in PURTA, that the plaintiffs have not stated a cause of action.

We hold that the preliminary objections of the defendants must be sustained for the following reasons.

Article VIII, Section 4 of the Pennsylvania Constitution of 1968 reads as follows:

"The real property of public utilities is subject to real estate taxes imposed by local taxing authorities. Payment to the Commonwealth of gross receipts taxes or other special taxes in replacement of gross receipts taxes by a public utility and the distribution by the Commonwealth to the local taxing authorities of the amount as herein provided shall, however, be in lieu of local taxes upon its real property which is used or useful in furnishing its public utility service. The amount raised annually by such gross receipts or other special taxes shall not be less than the gross amount of real estate taxes which the local taxing authorities could have imposed upon such real property but for the exemption herein provided. This gross amount shall be determined in the manner provided by law. An amount equivalent to such real estate taxes shall be distributed annually among all local taxing authorities in the proportion which the total tax receipts of each local taxing authority bear to the total tax receipts of

all local taxing authorities, or in such other equitable proportions as may be provided by law.

"Notwithstanding the provisions of this section, any law which presently subjects real property of public utilities to local real estate taxation by local taxing authorities shall remain in full force and effect.

SCHEDULE

"Section four shall take effect July 1, 1970, unless the General Assembly earlier provides enabling legislation in accordance therewith."

As we have said so many times in our prior PURTA cases,[2] the wording of the Constitution controls. A careful reading of Article VIII, Section 4 discloses that the real estate tax equivalent shall be distributed to all local taxing authorities in accordance with the formula stated therein "or in such other equitable proportions as may be provided by law." We hold that the General Assembly properly carried out the intent of Article VIII, Section 4 through Sections 6 and 7 of PURTA.[3] There is nothing in Section 6 of PURTA

---

[2] *American Telephone and Telegraph Company v. Board of Property Assessment, Appeals and Review, supra; Duquesne Light Company v. Board of Property Assessment, Appeals and Review, supra; Heller v. Depuy, supra.*

[3] Section 7, 72 P.S. §3277 provides:

"(a)    From the reports received by it in each year pursuant to Section 6, the department shall determine:

"(1)    The total tax receipts shown in all such reports.

"(2)    The total realty tax equivalent shown in all such reports.

"(b)    On or before the first day of October of 1971 and of each year thereafter, the department shall distribute to each reporting local taxing authority its share of the total realty tax equivalent determined pursuant to subsection (a)(2), which share shall be the ratio which the total tax receipts reported by that local taxing authority bear to the total tax receipts determined pursuant to subsection (a)(1).

which would prohibit any local taxing authority from submitting to the Department of Revenue the information required in Section 6. All of that information was available to local taxing authorities. Section 6(b), which provided for the forfeiture of a local taxing authority's right to share in the distribution, was a reasonable legislative condition contemplated by the provision of Article VIII, Section 4 of the Constitution of 1968. Deer Lakes, having admitted its failure to file the necessary reports required by Section 6 of PURTA for the years 1971 and 1972, is precluded (as is the class similarly situated) from making a claim for the benefits of PURTA. Therefore, Deer Lakes, in the first cause of action, has failed to state a cause of action. The preliminary objections will be sustained and the first cause of action will be dismissed.

With reference to the alternative and second cause of action, the preliminary objections must be sustained and the complaint dismissed. Article VIII, Section 4 in no way restricts the Commonwealth from imposing and collecting the gross receipts tax or any other tax on public utilities for the purpose of raising sufficient revenues to meet the mandate of the Constitution, whereby "an amount" equivalent to the real estate taxes which would otherwise be imposed upon public utility realty is distributed to the local taxing authorities by some equitable formula "as may be provided by law." The constitutional provision is quite clear that if the gross receipts tax standing alone was sufficient to meet the payment of the real estate tax equivalent to the local taxing authorities, it would not have been necessary for the General Assembly to have even enacted PURTA. As we stated in *Heller v. Depuy, supra,* it

---

"(c) For the purpose of making such payment, the department shall make requisition therefor in the manner prescribed by the fiscal code."

is obvious that PURTA was passed to provide sufficient additional revenues to meet the obligation of the constitutional mandate of paying the tax equivalent to the local taxing authorities, without reducing the revenues paid into the general fund for other Commonwealth purposes. There is absolutely nothing in the constitutional provision which would prohibit the Commonwealth from imposing taxes in excess of that real estate tax equivalent. There is absolutely nothing in the constitutional provision which would prohibit the Commonwealth from retaining revenues collected by the imposition of a tax on public utility realty in excess of the real estate tax equivalent mandated to be distributed to the local taxing authorities. For this reason, the preliminary objections must be sustained and the complaint dismissed.

Inasmuch as we have sustained the preliminary objections, based upon the demurrer, it is not necessary for us to rule on the other preliminary objections raising questions of jurisdiction and laches. It is likewise unnecessary for us to rule on the preliminary objections of the Auditor General. We therefore

## ORDER

AND NOW, this 4th day of December, 1973, it is hereby ordered that the preliminary objections of Robert P. Kane, Secretary of Revenue, Robert P. Casey, Auditor General, Israel Packel, Attorney General, and Grace M. Sloan, State Treasurer of the Commonwealth of Pennsylvania filed at No. 341 C.D. 1973, are overruled, and leave is granted to said defendants to file an answer to the complaint of the plaintiffs within 30 days from the date hereof; and it is hereby further ordered that the preliminary objections of the defendants filed at No. 477 C.D. 1973, are sustained and the complaint dismissed.

CONCURRING AND DISSENTING OPINION BY JUDGE MENCER:

I concur with the majority disposition of the case filed at No. 477 C.D. 1973.

I respectfully dissent to the majority's resolution of the question as to whether or not Section 7(b) of PURTA required the distribution of PURTA monies prior to October 1, 1971. I read Section 7(b) to provide the Commonwealth with the prerogative of determining when distribution shall be made, conditioned only that distribution be made not later than October 1, 1971.

I would therefore, in the case filed at No. 341 C.D. 1973, sustain the preliminary objections of the defendants and dismiss the complaint.